(906 P.2d 156)

No. 71,863

PATRICIA GRIMMETT, *Appellant*, v. MICHAEL J. BURKE, S & W AUTO SALES CO., LEWIS TOYOTA, INC., and FARMERS INSURANCE COMPANY, *Appellees*.

Opinion filed November 9, 1995.

*William P. Ronan*, of Cloon, Bennett & Ronan, of Overland Park, for the appellant.

*W. Robert King* and *Katherine C. Opie*, of Couch, Strausbaugh, Pierce & King, Chartered, of Overland Park, for appellee Michael J. Burke.

*Donald P. Herron* and *Rodney K. Murrow*, of Kansas City, Missouri, for appellee S & W Auto Sales Co.

*Donald C. Bollard*, of Sherman, Taff & Bangert, P.C., of Leawood, for appellee Lewis Toyota, Inc.

*Bren Abbott*, of Heilbron, Powell & Berra, of Kansas City, Missouri, for appellee Farmers Insurance Company.

Before LEWIS, P.J., PIERRON, J., and JAMES W. PADDOCK, District Judge Retired, assigned.

LEWIS, J.: Patricia Grimmett was a passenger in an automobile driven by Michael J. Burke. On July 22, 1990, she was injured when that automobile crossed the center line of a street and hit a light pole. Grimmett sued Burke, Lewis Toyota, Inc. (Lewis Toyota), S & W Auto Sales Co. (S & W), and Farmers Insurance Company (Farmers) in an effort to recover damages sustained in that accident. She appeals from adverse rulings in favor of the defendants.

Lewis Toyota is an automobile dealer in Topeka. Lewis Toyota delivered possession of the 1989 Grand Am automobile in question to Burke.

S & W is an automobile dealer with offices in Harrisonville, Missouri. After the accident, Lewis Toyota was paid the purchase price of the car by S & W and assigned the title certificate to S & W. Burke had some relationship with S & W, but it is denied that he was their agent or employee. After the accident, the owner of S & W bailed Burke out of jail where he was being held on DUI charges. It is also relevant that the license tags on the vehicle at the time of the accident were registered to S & W.

On the date of the accident, Burke, in the company of Grimmett, picked up the automobile from Lewis Toyota. Darrel Roeder, the used car manager at Lewis Toyota, testified that he had been involved in about 50 auto transactions with Burke since 1989. Roeder testified that he believed Burke was doing business for or as S & W. All of his face-to-face transactions with S & W were through Burke, who paid for any car he purchased with S & W checks. Roeder testified that he understood that Burke purchased the

Grand Am through or for S & W. He indicated that Burke was to pay for the vehicle within 30 days and, at the time of payment, would be given an assigned title. This method was consistent with their past dealings.

On the date of the accident, Grimmett was apparently assisting Burke as he drove automobiles between dealerships. Burke and Grimmett drove around the Kansas City area in the Grand Am, looking for other cars to buy. The next day, they resumed their search. After driving for some period of time, they decided to go to Burke's sister's house to swim and have a few drinks. There is no doubt that they had a few drinks and apparently went swimming as well. At some time during the afternoon it began to rain, and Burke and Grimmett found themselves locked out of his sister's house. They both got into the Grand Am to stay dry and to sleep. Sometime during the night, Burke woke up and drove off with Grimmett, who was still asleep. Grimmett's next memory was seeing a physician after the accident.

Neither Lewis Toyota nor S & W admit to owning the Grand Am at the time of the accident. Lewis Toyota maintains that it sold the car to Burke or to S & W. S & W denies owning the car at the time of the accident but admits it later paid for and received title to the vehicle.

After the accident, it was discovered that Burke did not have a valid driver's license. His license had been suspended, not for driving violations, but for failing to pay parking tickets. Despite the suspension of his driver's license, Burke remained in physical possession of it at the time of the accident.

The purpose of the pretrial maneuvers was to determine who could be held responsible for Burke's negligence. In addition, a significant issue concerns whether the action against Burke is time barred by reason of Grimmett's failure to serve Burke within the statute of limitations. The trial court granted pretrial judgment in favor of all defendants.

Further facts will be developed as needed to develop the issues on appeal.

## SERVICE OF PROCESS

An action must be "commenced" prior to the running of the applicable statute of limitations. Easily the most troublesome question in this lawsuit is whether Grimmett commenced her action against Burke within that time frame. The trial court held that the action against Burke was time barred.

The statute of limitations in this case was 2 years. This action must have been "commenced" prior to July 22, 1992, 2 years after the date of the accident, or the filing must somehow relate back to that date in order for it to have been timely filed.

Grimmett filed case No. 93-28 on August 22, 1990, and Burke was properly served on November 20, 1990. For reasons not relevant to this appeal, case No. 93-28 was dismissed without prejudice in October 1992.

The instant action was filed on March 15, 1993, within 6 months of the dismissal of case No. 93-28. In order for this action to be "commenced" within the statute of limitations, service on the defendant had to be obtained within 90 days. See K.S.A. 60-518.

"A civil action is commenced at the time of: (1) Filing a petition with the clerk of the court, *if service of process is obtained or the first publication is made for service by publication within 90 days after the petition is filed, except that the court may extend that time an additional 30 days upon a showing of good cause by the plaintiff;* or (2) service of process or first publication, if service of process or first publication is not made within the time specified by provision (1)." (Emphasis added.) K.S.A. 60-203(a).

Grimmett originally sought to serve Burke on April 28, 1993, by leaving a copy of the petition and summons at 9722 State Line Avenue and then mailing the same to that address. It was assumed that this was the address of Burke's dwelling house or usual place of abode. The original return of service showed that copies were left at the address by the sheriff's office. However, on May 10, 1993, an amended return was filed, showing that the mailing was returned to the sheriff's office indicating: "(1) moved, left no address; (2) unable to forward; (3) return to sender."

On May 21, 1993, the defendant's attorney advised the plaintiff that they would contest service of process. Despite this notification,

the plaintiff attempted no further service on the defendant until January 1994.

The plaintiff undertook a number of steps to locate Burke. On June 10, 1993, the plaintiff was advised by the Kansas Department of Motor Vehicles that Burke's address was 8900 Gillette in Lenexa. Upon receiving this information, the plaintiff asked for and was given an additional 30 days to complete service on Burke.

The plaintiff next hired a "skip tracer" to find Burke. On July 9, 1993, the skip tracer reported that "[s]ubject still lives at 8900 Gillette, Lenexa, Kansas 66215 . . . [s]ubject also has a P.O. Box 14886, Leawood, Kansas 66206."

On July 14, 1993, the plaintiff's 120 days to obtain service from the date of the filing of the petition expired.

On August 15, 1993, the plaintiff wrote to Burke's attorneys, advising them that she believed her service on Burke at 9722 State Line Avenue was valid. On September 13, 1993, attorneys for Burke, fearful that the plaintiff might take a default judgment, filed a motion for summary judgment, citing the failure of service and expiration of the statute of limitations.

On December 9, 1993, the trial court dismissed the action against Burke for lack of jurisdiction due to the running of the statute of limitations. On January 4, 1994, Burke was finally served when a summons and petition were served on his wife at his home.

Burke has filed an affidavit stating that he did not live at 9722 State Line Avenue in 1993 and that he was not aware that anyone was trying to serve him with process until his wife was served in January 1994.

Additionally, there is nothing in the record to indicate that either Burke's insurance company or his attorneys knew how to locate him prior to January 1994.

## A. Service of April 28, 1993

Initially, Grimmett argues that her service on Burke at 9722 State Line Avenue was valid. We disagree.

The trial court held that the summons in this instance was not left at Burke's dwelling house or usual place of abode. That determination is supported by substantial competent evidence and will

not be disturbed by this court on appeal. *Stumfoll v. Inman*, 188 Kan. 553, 555, 363 P.2d 443 (1961); *Arnette v. Arnette*, 162 Kan. 677, Syl. ¶ 7, 178 P.2d 1019 (1947).

Virtually all of the evidence in the record indicates that Burke did not live at 9722 State Line Avenue at the time of the purported service. The amended return of service shows that he had moved and left no forwarding address. The plaintiff made some effort to determine where Burke lived and was advised by two sources that he lived at 8900 Gillette and not at 9722 State Line Avenue. Despite this information, the plaintiff made no effort to attempt service on Burke at 8900 Gillette.

An affidavit from a postal service employee states that someone else moved into the 9722 State Line Avenue residence on June 5, 1992. It further indicates that the mail carrier filed a "moved, left no forward card" relative to Burke.

The record clearly indicates the summons of April 28, 1993, was not left at Burke's "dwelling house or usual place of abode," as required by K.S.A. 60-205. It follows that mailing a copy of the summons and petition to that same address would not effect service on Burke.

Grimmett argues that her service was done in "substantial compliance" with service requirements. We disagree. K.S.A. 60-204 provides in part:

"In any method of serving process, substantial compliance therewith shall effect valid service of process if the court finds that, notwithstanding some irregularity or omission, *the party served was made aware that an action or proceeding was pending in a specified court in which his or her person, status or property were subject to being affected.*" (Emphasis added.)

No one in this action argues that Burke received the summons left at 9722 State Line Avenue or the copy mailed to that address. There is nothing in the record to show or even imply that Burke personally received notice of the action as a result of the attempted service of April 28, 1993. The fact that Burke's attorneys knew that service had been attempted does not show that Burke knew the action was filed, nor does it show substantial compliance with the statute. See *Thompson-Kilgariff General Insurance Agency, Inc. v. Haskell*, 206 Kan. 465, 468, 479 P.2d 900 (1971).

We hold that the service of April 28, 1993, was invalid and was not "service of process" within the meaning of K.S.A. 60-203(a). We further hold that the service did not substantially comply with the recognized methods of serving process in this state.

### B. K.S.A. 60-203(b)

At this point, the plaintiff's hopes of having commenced her action against Burke within the statute of limitations lie within the provisions of K.S.A. 60-203(b), which reads:

"If service of process or first publication *purports to have been made* but is later adjudicated to have been invalid due to any irregularity in form or procedure or any defect in making service, the action shall nevertheless be deemed to have been commenced at the applicable time under subsection (a) if valid service is obtained or first publication is made within 90 days after that adjudication, except that the court may extend that time an additional 30 days upon a showing of good cause by the plaintiff." (Emphasis added.)

In this case, the trial court declared the plaintiff's service of April 28, 1993, invalid on December 9, 1993. Plaintiff then issued an alias summons and served the petition on Burke's wife on January 4, 1994. This service was made within 90 days of the December 9, 1993, adjudication and will sustain the plaintiff's action against Burke if 60-203(b) applies to these facts.

K.S.A. 60-203(b) applies where service "purports to have been made" but is later determined invalid. Plaintiff argues that she "purported" to serve Burke when she had the summons delivered to 9722 State Line Avenue.

When may it be said that a party has "purported to have made service" on another party? There is only one appellate decision in Kansas which sheds any light on this issue and that is *Hughes v. Martin*, 240 Kan. 370, 373-76, 729 P.2d 1200 (1986). In that case, service was attempted to be made on Lynn E. Martin, administrator of an estate. A summons and petition were in fact served on "Lynn Martin" by leaving them with a secretary at his law office. Although there was no conceivable chance that this service *did not* notify Lynn Martin that he had been sued as an administrator, service was declared insufficient. The trial court then held that K.S.A. 60-203(b) was applicable and extended the time for obtain-

ing proper service on the defendant. The Supreme Court agreed and discussed K.S.A. 60-203(b) as follows:

"Simply stated, the defendant maintains that the original service upon Lynn E. Martin, as an individual, was irregular, defective, and insufficient to serve notice of suit upon the true defendant, Lynn E. Martin, as administrator of the estate of Michael W. Baldwin, deceased. Defendant contends that there was no *purported service* upon Lynn E. Martin as administrator; that contrary to the requirement of K.S.A. 60-204, there was no *substantial* compliance with the methods of service of process authorized by Article 3 of Chapter 60; that the service upon Lynn E. Martin, *individually*, not only was irregular, defective, and insufficient as found by the court but was in fact a *nullity* as to *Lynn E. Martin, administrator*, and constituted 'no service' upon the administrator. Counsel for the defendant further contends that, there having been no service of process upon Lynn E. Martin, administrator, as required by K.S.A. 60-203(a), the re-serve provisions of K.S.A. 60-203(b) do not and cannot apply, and the trial court's ruling permitting re-service should be set aside because the action was never commenced within the statutory period of limitations. The statute has run and the provisions of K.S.A. 60-203 do not allow a refiling. The defendant urges this court to hold that the case should be reversed and remanded with directions to dismiss the plaintiff's action.

"The plaintiff takes the position that the 1983 amendment to K.S.A. 60-203 was for the express purpose of correcting the injustice which existed as a result of *Bray v. Bayles*, 228 Kan. 481, 618 P.2d 807 (1980); *Briscoe v. Getto*, 204 Kan. 254, 462 P.2d 127 (1969); and *Dunn v. City of Emporia*, 7 Kan. App. 2d 445, 643 P.2d 1137, *rev. denied* 231 Kan. 799 (1982). In those cases, where the service was found to be defective, it was held that the running of the statute of limitations was not tolled although the defendant gained knowledge of the pendency of the action through the faulty process. In each case, the defendant appeared in the case but did not seriously raise the issue of improper service until after the 90-day period for obtaining service had expired. Plaintiff maintains that K.S.A. 60-203(b) was enacted for the express purpose of remedying the injustice brought about by prior Kansas case law.

"In this regard, we note the comments of Spencer A. Gard in 1 Gard's Kansas C. Civ. Proc. 2d Annot. § 60-203 (1986 Supp.) in regard to the 1983 amendment to K.S.A. 60-203:

'Subsection (b) is new by virtue of 1983 amendment. Its purpose is to save from disaster on account of the running of the statute of limitations such situations as existed in *Briscoe v Getto*, . . . ; *Bray v Bayles*, . . . ; and *Dunn v City of Emporia*, . . . , where service was held to be defective and the running of the statute not tolled although the defendants had actual knowledge of the pendency of the action through the faulty process. The amendment is in keeping with the spirit of the original code provisions, par-

ticularly in the light of section 60-204, and really should not have been necessary except for conflicting appellate court views.'

"A similar comment on 60-203(b) may be found in 1 Vernon's Kansas C. Civ. Proc. § 60-203 (1984 Supp.):

'The more significant change is the addition of subsection (b) which will reduce the instances in which defective service of process will result in actions being barred by the statute of limitations. The problem under the former law may be illustrated as follows: Shortly before the expiration of the statute of limitations, a petition is filed in an action against an individual defendant. Process is delivered to defendant's secretary at defendant's business office. Such service does not comply with K.S.A. 60-304(a) because the secretary is not an agent specially designated for service of process. More than 90 days after the petition was filed and after the statute of limitations has run defendant raises insufficiency of service of process as a basis for dismissing the action. Following dismissal of the action, plaintiff obtains proper service of alias process upon defendant. Under former law the action was commenced when alias process was served rather than when the petition was filed and defendant could assert a valid statute of limitations defense. See e.g. *Haley v. Hershberger*, 1971, 207 Kan. 459, 485 P.2d 1321; *Bray v. Bayles*, 1980, 4 Kan. App. 2d 596, 609 P.2d 1146, *reversed in part on other grounds*, 1980, 228 Kan. 481, 618 P.2d 807; *Briscoe v. Getto*, 1969, 204 Kan. 254, 462 P.2d 127; *Dunn v. City of Emporia*, 1982, 7 Kan. App. 2d 445, 643 P.2d 1137.

'Under the 1983 amendment, the statute of limitation will not defeat plaintiff's action if plaintiff acts promptly after the dismissal for insufficiency of service of process. If plaintiff purports to have made timely service which is subsequently adjudged invalid, the action will still be considered commenced when filed if plaintiff makes service of process within 90 days after that adjudication, or within 120 days of that adjudication if the Court allows additional time upon a showing of good cause.'

"We have concluded that, under the factual circumstances present in this case, the trial court correctly interpreted and applied K.S.A. 60-203(b). K.S.A. 60-102 specifically provides that the provisions of the Kansas Code of Civil Procedure shall be liberally construed to insure the just determination of every action or proceeding. Under that section, we must construe K.S.A. 60-203(b) liberally to secure the just determination of the action now before us. K.S.A. 60-203(b) states that, if service of process *purports to have been made* within the time specified by (a)(1) but is later adjudicated to have been invalid due *to any irregularity* in form or procedure or *any defect* in making service, the action shall nevertheless be deemed to have been commenced if valid service is made within 90 days *after that adjudication*.

"Black's Law Dictionary 1112 (5th ed. 1979), defines the verb 'purport' to mean 'to have the appearance of being.' K.S.A. 60-203(b) is also declared to be applicable to any situation where the original service was invalid due to '*any irregularity*' in form or procedure or *any defect* in making service. The use of the word

*any* makes crystal clear the legislative intent that the statute is to be liberally applied in cases involving *any irregularity* or *any defect* in the service of process.

"K.S.A. 60-203(b) originated as an amendment to the Kansas Civil Code proposed by the Kansas Judicial Council, which obviously was concerned about the situation brought about as the result of the decisions of this court in *Bray v. Bayles*, 228 Kan. 481; *Briscoe v. Getto*, 204 Kan. 254; and *Dunn v. City of Emporia*, 7 Kan. App. 2d 445. We have no hesitancy in holding that, under the particular factual circumstances in this case, the trial court did not err in holding that K.S.A. 60-203(b) was applicable and in extending the time for obtaining proper service upon the defendant." 240 Kan. at 373-76.

*Hughes v. Martin* establishes that 60-203(b) is to be liberally construed. It also indicates that the application of the statute is factual in nature. The court also defines the verb "purport" to mean "to have the appearance of being." As we understand the court's language, if service purports to have been made, it must appear to have been made.

There are two ways to construe the statute, one is extremely liberal and the other appears to be a commonsense approach. A very liberal construction gives the plaintiff a second chance at service. It would establish that a plaintiff *always* gets a second chance under 60-203(b) when his or her original service has been determined invalid. This would be true no matter how inept or how lacking in good faith the original service may have been. In the extreme, a liberal approach of this nature would simply ignore the first service and extend the process far beyond applicable time frames. This approach would allow a party to simply leave a summons for John Doe at a bar, at a church, at Arrowhead Stadium, at the courthouse, or any other place and still insist that by doing so the party had "purported" to serve a defendant. Such a liberal construction is ludicrous; we do not believe it was intended and will not adopt that approach. The purpose of 60-203(b) is to give a second chance at service to a party whose original service was declared invalid despite the fact that it gave the defendant notice of suit.

We hold that before it can be said that service has "purported to have been made," it must be shown that a defendant was given actual notice of having been sued. We also conclude that the following factors should exist: (1) The original service must have "ap-

peared" to be valid and the returns by the sheriff's office or other process servers must indicate that the service was valid. (2) The record should show that the plaintiff believed in good faith that his or her service was valid and relied on that validity to his or her detriment. (3) The plaintiff had no reason to believe the defendant was contesting service until after the statute of limitations had run, but had no opportunity to take steps to correct the defective service.

These requirements are consistent with prior decisions in this area. In *Read v. Miller*, 247 Kan. 557, 562, 802 P.2d 528 (1990), our Supreme Court, in comparing 60-203(a) and (b), said:

> "The two subsections apply, however, to different situations: Under subsection (b), *the defendant has been served, albeit defectively, and has notice that an action has been brought against him; under subsection (a), the defendant has not been served and has no notice that an action has been filed.*" (Emphasis added.)

The court in *Hughes* defined the verb "purport" as meaning "to have the appearance of being." As we view this, service must appear to have been valid. The only method we know to give service an appearance of being valid is to examine the return and, if it appears from the return that defendant was personally served, then the service has the "appearance" of having been valid.

In addition, the court in *Hughes* indicated that 60-203(b) was enacted by the legislature to correct injustices created by *Bray v. Bayles*, 228 Kan. 481, 618 P.2d 807 (1980); *Briscoe v. Getto*, 204 Kan. 254, 462 P.2d 127 (1969); and *Dunn v. City of Emporia*, 7 Kan. App. 2d 445, 643 P.2d 1137, *rev. denied* 231 Kan. 799 (1982). In all three of these cases, while service was defective, it was clear that the defendants were still given actual notice that suit had been filed. In each case, the plaintiff had apparently relied on the service to his or her detriment. In each case, the defendants did not raise the issue of improper service until it was too late for the plaintiff to obtain proper service.

We conclude that by limiting the phrase "purports to have been made" to those situations alluded to above, we correct the problem 60-203(b) was passed to correct. In this case, the plaintiff's first attempt was to serve the defendant at an address which was neither

his dwelling nor his usual place of abode. The amended return of the sheriff clearly shows that the defendant did not live at the address where service was attempted. An examination of that amended return shows that service was not valid and did not have the "appearance" of being valid. There is nothing in the record to show that Burke received any notice by the original service.

After the original service was attempted, the plaintiff came into information indicating that 9722 State Line Avenue was not Burke's address or usual place of abode. This information came from the Kansas Department of Motor Vehicles and the "skip tracer" hired by the plaintiff. These facts belie any good faith belief that the service had been valid.

The plaintiff was advised on May 21, 1993, that the defendant was going to contest service. At this point, the plaintiff had ample opportunity to issue an alias summons but made no effort to do so. Indeed, from April 28, 1993, to January 4, 1994, the plaintiff made no attempt to obtain proper service on Burke.

We hold that under the facts of this case, it cannot be said that service "purported" or "appeared" to have been made on Burke on April 28, 1993. Accordingly, K.S.A. 60-203(b) does not apply, and the trial court did not err in dismissing the plaintiff's action against Burke as being barred by the statute of limitations.

## LEWIS TOYOTA—NEGLIGENT ENTRUSTMENT

Grimmett's claim against Lewis Toyota is based on negligent entrustment. "[A] motor vehicle dealer is liable for damages resulting from an accident involving one of its vehicles only if it negligently entrusts a vehicle to an incompetent driver. The relationship of dealer and permissive driver or prospective purchaser, standing alone, is not sufficient to create vicarious liability." *West v. Collins*, 251 Kan. 657, Syl. ¶ 7, 840 P.2d 435 (1992). This claim was resolved in favor of Lewis Toyota by entry of summary judgment.

"The burden on the party seeking summary judgment is a strict one. The trial court is required to resolve all facts and inferences which may reasonably be drawn from the evidence in favor of the party against whom the ruling is sought. Summary judgment is appropriate when the pleadings, depositions, answers to inter-

rogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. When opposing a motion for summary judgment, an adverse party must come forward with evidence to establish a dispute as to a material fact. In order to preclude summary judgment, the facts subject to the dispute must be material to the conclusive issues in the case. On appeal we apply the same rule, and where we find reasonable minds could differ as to the conclusions drawn from the evidence, summary judgment must be denied. [Citations omitted.]" *Mitzner v. State Dept. of SRS*, 257 Kan. 258, 260-61, 891 P.2d 435 (1995).

In general, negligent entrustment occurs when the owner of an automobile allows a third party to drive it while knowing that the driver is incompetent, careless, or reckless. *Mid-Century Ins. Co. v. Shutt*, 17 Kan. App. 2d 846, 848, 845 P.2d 86 (1993); *McCart v. Muir*, 230 Kan. 618, Syl. ¶ 2, 641 P.2d 384 (1982). The common-law concept of negligent entrustment focuses on the ability of the driver to operate the vehicle safely.

We have examined the record on appeal, and there is no evidence to indicate that Burke was an incompetent, careless, or reckless driver. There is no indication that Lewis Toyota knew or should have known that he was such a driver. In short, there is no basis under which one could conclude that Lewis Toyota negligently allowed Burke to drive one of its automobiles, knowing him to be a dangerous, reckless, or careless driver.

It is true that Burke's license was suspended at the time of the accident. This suspension was based on unpaid parking tickets and not on incompetent or reckless driving habits. There is no indication that the proximate cause of the accident was related to Burke's driver's license having been suspended.

There is nothing in the record to suggest that Lewis Toyota knew or should have known that Burke's driver's license was suspended. In fact, Burke remained, at all times, in physical possession of his driver's license. There is nothing in this record to suggest that Lewis Toyota should have inquired at the Kansas Department of Motor Vehicles as to whether Burke had a valid driver's license.

In the final analysis, these facts stand out: (1) Lewis Toyota had no reason to believe that Burke was an incompetent or reckless driver; (2) although Burke's license had been suspended, that sus-

pension had absolutely nothing to do with the cause of the accident; (3) Lewis Toyota did not know and had no reason to know or even suspect that Burke's license had been suspended. There is no evidence to support a theory of negligent entrustment, and the trial court did not err in granting a motion for summary judgment on that issue.

## S & W AUTO SALES CO.—AGENCY—OWNERSHIP— NEGLIGENT ENTRUSTMENT

Grimmett's allegations against S & W are framed in terms of negligent entrustment and agency. The trial court granted summary judgment to S & W on both theories.

As to the negligent entrustment theory, we hold the trial court did not err. The claim of negligent entrustment against S & W fails for the same reasons that the claim of negligent entrustment failed against Lewis Toyota. Our reasoning on the negligent entrustment claim against S & W is essentially the same as we expressed in analyzing the claim against Lewis Toyota and will not be repeated.

There is an issue as to who owned the automobile at the time of the accident. The trial court granted summary judgment in favor of S & W, holding that it was not the owner of that automobile at the time of the accident. We conclude this was error. According to the testimony of Darrel Roeder, Lewis Toyota's used car manager, the vehicle was delivered to Burke with the understanding that title would be assigned and delivered when the car was paid for, within 30 days. Under K.S.A. 8-135(c)(7), title may be deemed transferred upon delivery of the vehicle when the parties agree that the certificate is to be delivered to the buyer within a period "not to exceed 30 days." If Burke was acting as the agent for S & W, as Roeder believes, then the understanding between the parties could very well be construed as having transferred ownership of the vehicle to S & W upon delivery of that vehicle to Burke. As will soon be observed, we view the question of Burke's relationship to S & W to be one of fact that must be decided by the trier of fact. Accordingly, the issue of ownership cannot be resolved until it is determined whether Burke was an agent or an employee of S & W.

There is some argument as to which law should control the issue of ownership of the vehicle. S & W argued that Missouri law should apply since it is a Missouri corporation. The controlling law is determined by the situs of the automobile at the time of sale. See *Dobbins v. Martin Buick Company*, 216 Ark. 861, 863-64, 227 S.W.2d 620 (1950). In *Shutts v. Phillips Petroleum Co.*, 235 Kan. 195, 679 P.2d 1159 (1984), *rev'd in part on other grounds* 472 U.S. 797, 86 L. Ed. 2d 628, 105 S. Ct. 2965 (1985), our Supreme Court said: "The general rule is that the law of the forum applies unless it is expressly shown that a different law governs, and in case of doubt, the law of the forum is preferred." 235 Kan. at 221. Since the precise location of the vehicle at the time title was transferred is not shown by the record, there is some doubt as to which state's law applies. Accordingly, the law of Kansas is preferred and should have been applied by the trial court.

The trial court also granted summary judgment to S & W on the issue of whether Burke was its agent or employee. We conclude that this was error and that a genuine issue of fact exists regarding the relationship of Burke and S & W.

We are not certain as to the precise relationship between Burke and S & W; however, there are a number of facts in the record which suggest that the relationship was much more than casual: (1) Darrel Roeder testified that it was his understanding that Burke was purchasing the vehicle through S & W, whom Burke represented. (2) All of Roeder's face-to-face transactions with S & W were through Burke, and Burke paid for the cars he bought from Lewis Toyota with S & W checks. (3) At the time of the accident, the 1989 Grand Am was displaying a license plate issued to S & W. (4) After the accident, S & W paid Lewis Toyota for the automobile. (5) When Burke was arrested for DUI as a result of the accident and put in jail, the owner of S & W bailed him out.

There are a number of other facts concerning the relationship between Burke and S & W. We are not certain as to what these facts indicate, but it is certainly possible that under facts such as are cited above, Burke could be considered to have been S & W's employee or its agent. Indeed, when viewed in the light most favorable to Grimmett, the evidence shows Burke was at least the

agent of S & W if not its employee. We hold that the trial court erred in resolving this issue at the summary judgment stage and reverse that decision. On remand, the trier of fact will be required to determine whether Burke was the employee or agent of S & W at the time of the accident.

## FARMERS INSURANCE COMPANY

Burke had no liability insurance at the time of the accident. Grimmett was a member of her parents' household at that time, and her parents were insured through Farmers Insurance Company. Their policy contained uninsured motorist coverage for all of the insureds under the policy, which included Grimmett.

Grimmett sued Farmers, claiming that Burke was an uninsured motorist. The trial court dismissed the action against Farmers after concluding that Burke was covered by policies issued to S & W or to Lewis Toyota or both.

Grimmett appears to argue that under K.S.A. 40-284, uninsured motorist coverage is available when the operator is uninsured even though the owner of the automobile is covered by a policy. Grimmett is wrong. "The majority view in this country, which we adopt in the present case, is that a vehicle of which either the owner or driver is covered by minimum insurance coverage is not 'uninsured' even though one of those persons has no insurance." *State Farm Mut. Auto. Ins. Co. v. Cummings*, 13 Kan. App. 2d 630, 634, 778 P.2d 370, *rev. denied* 245 Kan. 786 (1989).

The law of this state is clear that if Burke was covered by an insurance policy in favor of Lewis Toyota or S & W, he was not an uninsured driver, and Farmers Insurance Company has no liability.

Both S & W and Lewis Toyota were insured, and those policies are in the record and were properly before the trial court. Both S & W and Lewis Toyota have at least the minimum insurance coverage for a "permissive user" of insured vehicles. One thing about this case that is absolutely certain is that Burke was operating the vehicle in question as a "permissive user" of Lewis Toyota or S & W or both. A "permissive user" is an insured under the policies issued to Lewis Toyota and S & W, and the liability under those

policies does not necessarily depend upon any negligence by the owner of the policy.

In the event it is determined that Lewis Toyota owned the vehicle, Burke would be covered under its policy. On the other hand, if S & W owned the vehicle or if Burke is determined to have been its agent or employee, he is covered under the S & W policy. In any event, Burke was not "an uninsured driver," and the plaintiff has no claim against Farmers. The trial court did not err in dismissing the action against Farmers.

A caveat to our decision is necessary. We reach our decision in the context of an appeal of rulings on motions to dismiss and motions for summary judgment. This necessarily means that the facts have not been fully developed. On remand, those facts will be fully developed. We cannot divine, at this point, what the facts at trial may show. Based on the facts as we now view them, Farmers' dismissal was not error.

Affirmed in part, reversed in part, and remanded.