(277 P.3d 1141)
No. 106,257

MARIE E. KUHN, individually, and ROBERT L. KUHN, individually, and as husband and wife, *Appellants*, v. HAROLD D. SCHMIDT, *Appellee*.

Rev'd and remanded by S. Ct. order May 2, 2014.

Opinion filed March 30, 2012.

*Morgan B. Koon,* of Koon Law Firm, LLC, of Wichita, and *Stephen W. Johnson,* of Cornerstone Law, L.L.C., of Newton, for appellants.

*Paul Hasty, Jr.,* of Hasty & Associates, LLC, of Overland Park, for appellee.

Before STANDRIDGE, P.J., MCANANY and ATCHESON, JJ.

MCANANY, J.: On June 2, 2006, Harold Schmidt and Marie Kuhn were involved in an automobile accident. On May 30, 2008, Kuhn filed suit against Schmidt, alleging injuries and damages resulting from Schmidt's negligence in the accident. Kuhn requested that the sheriff serve process on Schmidt at his apartment at an assisted living residential community where he resided. On June 2, 2008, Deputy Sheriff Scott Perkins went to Schmidt's apartment and knocked on the door. When there was no response, Perkins left the petition and summons with the receptionist at the front desk of the residential community. The receptionist said she would see that Schmidt received the papers. She apparently set the papers aside for Schmidt in an open box at the residential community, in an area separate from Schmidt's apartment. The following day Perkins filed his return on service of summons, stating that he had served Schmidt on June 2, 2008, by residential service.

Schmidt filed his answer on June 20, 2008, asserting that service of process was defective. The parties proceeded with discovery, but Kuhn made no inquiry into the nature of the claimed defect in service.

On April 27, 2009, Schmidt moved to dismiss for lack of personal jurisdiction due to insufficient service of process. The district court granted Schmidt's motion on May 18, 2009. Kuhn moved to set aside the order of dismissal. After a hearing on Kuhn's motion, the district court set aside the dismissal on June 29, 2009.

On August 17, 2009, Kuhn filed an alias summons and, on August 19, 2009, obtained personal service on Schmidt. Schmidt then filed his answer asserting that the action was barred by the 2-year statute of limitations.

Schmidt then moved for summary judgment based on his statute of limitations defense. He argued that his original answer put Kuhn on notice of the lack of personal jurisdiction over him and she took no action to correct the service defect within 90 days of the original date of service. Thus, the later service obtained on August 19, 2009, did not relate back to the date suit was filed. As a result, the suit was deemed commenced on August 19, 2009, the date service was perfected, which was long after the 2-year statute of limitation had expired.

The district court granted Schmidt's summary judgment motion. In doing so, the court found that the savings provisions of K.S.A. 60-203(b) did not apply because Kuhn was on notice of the defect in service when Schmidt filed his first answer but did nothing about it. When Schmidt filed his answer on June 20, 2008, Kuhn had 69 days left to perfect valid service on Schmidt, but Kuhn made no timely effort to do so. Kuhn appeals.

On appeal Kuhn contends that the original June 2, 2008, service on Schmidt was sufficient because it substantially complied with Kansas statutes on service of process. In the alternative, Kuhn argues that K.S.A. 60-203(b) applies to save Kuhn's negligence action because she served Schmidt with an alias summons within 90 days of the district court adjudicating Kuhn's service to be invalid.

We need not recount the standards for summary judgment and for appellate review because they are well known to the parties and are found in innumerable cases, including *Osterhaus v. Toth*, 291 Kan. 759, 768, 249 P.3d 888 (2011) (quoting *Warner v. Stover*, 283 Kan. 453, 455-56, 153 P.3d 1245 [2007]).

A civil action is commenced with the filing of the petition if the plaintiff obtains service of process on the defendant, or makes the first publication for service by publication, within 90 days thereafter, unless the 90-day period is extended for 30 days upon a showing of good cause. Otherwise, the date the action is commenced is the date that the defendant is served. K.S.A. 60-203(a). Pursuant to K.S.A. 60-513, Kuhn had 2 years from the date of the accident, or until June 2, 2008, to commence her negligence action against Schmidt. Kuhn filed suit on May 30, 2008, so she had 90

days thereafter within which to perfect service in order for service to relate back to the date suit was filed.

Here, Kuhn attempted to serve Schmidt through personal or residential service. K.S.A. 60-303(d)(1) provides that personal service "shall be made by delivering or offering to deliver a copy of the process and accompanying documents to the person to be served." It is clear that there was no personal service. K.S.A. 60-303(d)(1) states that residential service shall be made "by leaving a copy of the process and petition or other document to be served, at the dwelling house or usual place of abode of the person to be served with someone of suitable age and discretion *residing therein.*" (Emphasis added.) It is equally clear that residential service was not accomplished. The receptionist who accepted the papers did not reside there.

But K.S.A. 60-204 provides that service of process may still be achieved through substantial compliance:

"In any method of serving process, substantial compliance therewith shall effect valid service of process if the court finds that, notwithstanding some irregularity or omission, the party served was made aware that an action or proceeding was pending in a specified court in which his or her status or property were subject to be affected."

Kansas courts have interpreted substantial compliance to mean "compliance with respect to the essential matters necessary to assure every reasonable objective of the statute." But "Kansas case law is clear that mere knowledge of pending litigation is not a substitute for valid service of process." *Fisher v. DeCarvalho*, 45 Kan. App. 2d 1133, 1147, 260 P.3d 1218 (2011).

In *Fisher*, service of process was held defective when the plaintiff attempted to serve the defendant by means of certified mail at his business address. 45 Kan. App. 2d at 1147. The papers were received and signed for by an unknown person. The defendant filed an answer that set forth the affirmative defense of insufficient service of process. In finding that the plaintiff's method of service did not substantially comply with the Kansas statutes, the *Fisher* panel stated that the plaintiff "did not satisfy the most important objective of service of process, *i.e.*, actual service upon" the defendant or his authorized agent. 45 Kan. App. 2d at 1147.

The *Fisher* court cited *Haley v. Hershberger*, 207 Kan. 459, 485 P.2d 1321 (1971), *superseded by statute on other grounds as stated in Myers v. Board of Jackson County Comm'rs*, 280 Kan. 869, 874, 127 P.3d 319 (2006); see *Fisher*, 45 Kan. App. 2d at 1141-43. In *Haley*, the Kansas Supreme Court held that "[l]eaving a copy of a petition and summons with the secretary of the defendant is not substantial compliance with any of the provisions mentioned for personal service. The secretary was not an authorized agent to receive service of process. [Citation omitted.]" 207 Kan. at 463.

In keeping with *Fisher* and *Haley*, Perkins leaving the summons and petition with the receptionist was not substantial compliance with the statutory requirements for proper service of process. Delivering the summons and petition to an unauthorized third party who promises to pass them to the defendant does not constitute proper service of process even if the defendant is subsequently notified of the suit.

But Kuhn argues that K.S.A. 60-203(b) saves her claim from being barred by the statute of limitations. The statute provides:

"If service of process or first publication purports to have been made but is later adjudicated to have been invalid due to any irregularity in form or procedure or any defect in making service, the action shall nevertheless be deemed to have been commenced at the applicable time under subjection (a) if valid service is obtained or first publication is made within 90 days after that adjudication, except that the court may extend that time an additional 30 days upon a showing of good cause by the plaintiff."

The district court found that Kuhn could not claim that she was unaware that Schmidt was contesting service and thus K.S.A. 60-203(b) was inapplicable.

In *Grimmett v. Burke*, 21 Kan. App. 2d 638, 647-48, 906 P.2d 156 (1995), *rev. denied* 259 Kan. 927 (1996), the court determined that the following factors must exist before K.S.A. 60-203(b) applies:

"(1) The original service must have 'appeared' to be valid and the returns by the sheriff's office or other process servers must indicate that the service was valid. (2) The record should show that the plaintiff believed in good faith that his or her service was valid and relied on that validity to his or her detriment. *(3) The plaintiff had no reason to believe the defendant was contesting service until after the statute*

*of limitations had run, but had no opportunity to take steps to correct the defective service."* (Emphasis added.)

The *Grimmett* factors were adopted by our Supreme Court in *Pieren-Abbott v. Kansas Dept. of Revenue*, 279 Kan. 83, 101-02, 106 P.3d 492 (2005). The court in *Pieren-Abbott* held that K.S.A. 60-203(b) was inapplicable when a plaintiff was "clearly informed that [the defendant] was contesting service and could easily have served the [defendant] with summonses before the 90-day period in K.S.A. 60-203(a) had expired." 279 Kan. at 102. We are bound to follow *Pieren-Abbott*. See *Buchanan v. Overley*, 39 Kan. App. 2d 171, 175-76, 178 P.3d 53, *rev. denied* 286 Kan. 1176 (2008).

Here, Schmidt's June 20, 2008, answer raised the defense of insufficient service of process. Kuhn had 69 days thereafter within which to correct the defective service and have service of process on Schmidt relate back to the pre-statute-of-limitations filing of the petition. Kuhn failed to inquire into why Schmidt contested service of process before the 90-day relation-back period expired. Proper service of process was not accomplished until later. Accordingly, K.S.A. 60-203(b) was not available to Kuhn, and the service of process on Schmidt did not relate back to the filing of her petition. The district court correctly granted Schmidt's summary judgment motion.

Affirmed.

\* \* \*

ATCHESON, J., concurring: I concur in the decision affirming the judgment against Plaintiff Marie Kuhn on statute of limitations grounds, but I do so reluctantly. The judgment reflects the triumph of a true technicality that thwarted resolution of the legal dispute between Kuhn and Defendant Harold Schmidt on its merits. The result is all the more vexing because it rests on judicial gloss the appellate courts have placed on a statute enacted to prevent exactly what has happened in this case. This court manufactured the gloss in *Grimmett v. Burke*, 21 Kan. App. 2d 638, 647-48, 906 P.2d 156 (1995), *rev. denied* 259 Kan. 927 (1996). But the Kansas Supreme Court shined it up in *Pieren-Abbott v. Kansas Dept. of Revenue*, 279 Kan. 83, 101-02, 106 P.3d 492 (2005). So I am simply left to

point out the misguided statutory interpretation requiring me to join in a result in which inequity rivals waywardness.

## I.

Judge McAnany has well set out the relevant facts and the governing legal authority. And I agree with his conclusion—Kuhn gets no day in court for a decision on the underlying legal claim she has against Schmidt. We know very little about the motor vehicle collision, and maybe that is as it should be. Those circumstances really have nothing to do with how the procedural progression of the case now prevents a determination of the validity of her claim. It might be that a jury would find against Kuhn or award her far less than she thinks would be fair compensation. But we will never know because the courts have read requirements into K.S.A. 60-203(b) that have no foundation in the statutory language and undercut its very purpose. The legislature enacted K.S.A. 60-203(b) to avoid the dismissal of civil cases because of technical defects in the service of process when a defendant has received actual notice of the action and has responded, thereby kicking the usual litigation machinery into gear. If K.S.A. 60-203(b) were applied as written, Kuhn should have been given the chance to serve Schmidt correctly and to continue her action against him.

Shortly before the 2-year statute of limitations was to run on Kuhn's personal injury claim, her lawyer had the Harvey County Sheriff's Department serve a summons and petition on Schmidt. The deputy didn't find Schmidt at his apartment and left the paperwork with a receptionist or manager in the complex office. The deputy filled out the return on the summons as if he had gotten proper service on Schmidt. He didn't.

But Schmidt must have promptly received the summons and petition anyway—a lawyer filed an answer on his behalf a little more than 2 weeks later. The answer, among other things, challenged the legal sufficiency of the service. Kuhn did nothing further at that point to re-serve Schmidt. Some 10 months later, Schmidt moved to dismiss the suit for lack of personal jurisdiction based on insufficient service. Kuhn then served Schmidt properly with a summons and petition, the same documents he had actually

received at the beginning of the case presumably from the apartment complex employee rather than from the sheriff's deputy. Schmidt then filed another answer and asserted the statute of limitations had expired before he had been served correctly. The district court agreed and dismissed the suit.

The majority outlines the procedural gymnastics in the case, but I summarize them. After Kuhn filed her petition with the clerk of the district court, she had 90 days to serve it, along with a summons, on Schmidt. K.S.A. 60-203(a)(1). When Schmidt filed his first answer challenging service, Kuhn had roughly a 70-day window in which she could have correctly served the paperwork and still been within the statute of limitations. That's because under K.S.A. 60-203(a)(1), a suit is commenced for limitations purposes when the petition is filed *if* the defendant is properly served with the paperwork within 90 days. If not, the suit is commenced when the defendant is actually served properly. K.S.A. 60-203(a)(2).

Here, the return of service from the deputy stated service was proper, and Schmidt obviously had received a copy of the suit. But, in fact, the deputy failed to serve Schmidt in a legally satisfactory way when he left the papers with the apartment complex employee. See K.S.A. 60-304(a). So the suit was not commenced until Schmidt was correctly served 10 months later *after* the statute of limitations had run even though he got a lawyer and responded to the suit a couple of weeks after it was filed. In a common-sense ledger, the service error would be tallied in the column for technicalities that make no real difference. Schmidt suffered no actual prejudice in defending against Kuhn's suit because of the error, and he forthrightly claims none.

Kuhn argued either of two statutes saved her case. First, she said the deputy's service on the apartment complex employee amounted to "substantial compliance" with the rules and, therefore, was legally sufficient under K.S.A. 60-204. But the law is clear that when an individual has been sued, the petition and summons must be given to that person, left at his or her "dwelling house" with someone of suitable age residing there, or delivered to the residence by certified mail or comparable means producing a signed return receipt. K.S.A. 60-303(c), (d); K.S.A. 60-304(a). The

courts have long held that service on other persons, such as a defendant's office secretary, does not effect individual service or amount to substantial compliance under K.S.A. 60-204. See *Haley v. Hershberger*, 207 Kan. 459, 463, 485 P.2d 1321 (1971). I do not here quarrel with that rule and agree without reservation that Kuhn should not be permitted to rescue her action under K.S.A. 60-204.

Second, Kuhn sought to rely on K.S.A. 60-203(b). That statute provides:

"If service of process . . . purports to have been made but is later adjudicated to have been invalid due to an irregularity in form or procedure or a defect in making service, the action shall nevertheless be deemed to have been commenced at the applicable time under subsection (a) if valid service is obtained or first publication is made within 90 days after that adjudication."

By its plain language, K.S.A. 60-203(b) would apply here. The initial service of the petition and summons was adjudicated invalid because it was not given to Schmidt or left with someone else residing at his apartment—that's an "irregularity" in procedure or a "defect" in making service. The statutory language would allow Kuhn 90 days after the court's adjudication of insufficiency to properly serve Schmidt. The curative second service would then relate back to the date of the filing of the suit for statute of limitations purposes. And the litigation would continue on course and essentially without interruption for an ultimate determination on the merits of Kuhn's claim.

## II.

The legislature intended K.S.A. 60-203(b) as a safety valve to avoid dismissal of suits for technical flaws in service resulting in statute of limitations bars, even though defendants had received actual notice and had responded. *Hughes v. Martin*, 240 Kan. 370, 375-76, 729 P.2d 1200 (1986). In *Hughes*, the Kansas Supreme Court recognized the legislature enacted K.S.A. 60-203(b) to prevent that harsh result and pointed to *Dunn v. City of Emporia*, 7 Kan. App. 2d 445, 643 P.2d 1137, *rev. denied* 231 Kan. 799 (1982), as an example of the sort of inequitable outcome to be avoided. *Hughes*, 240 Kan. at 376. The court also cited *Bray v. Bayles*, 228 Kan. 481, 618 P.2d 807 (1980), and *Briscoe v. Getto*, 204 Kan. 254,

462 P.2d 127 (1969). The procedural history of *Dunn* is instructive because of significant similarities to what happened here.

Dunn had a personal injury claim against the City of Emporia. The petition and summons were personally served on the Emporia city attorney, and the return so stated. The City timely filed an answer asserting an affirmative defense of improper service of process. At that point, Dunn had about 60 days of the 90-day service period remaining in which to re-serve the City. But she made no effort to do so. A city may not be served through its city attorney; the petition and summons must be served on either the mayor or the city clerk. K.S.A. 60-304(d)(3). The suit, therefore, had not been "commenced" within the meaning of K.S.A. 60-203(a), and the statute of limitations had not been tolled. After the statute had run, the suit was dismissed for lack of prosecution. Dunn promptly refiled relying on K.S.A. 60-518, permitting an action "commenced within due time" to be refiled within 6 months after being dismissed other than on the merits. The district court then dismissed the refiled action on statute of limitations grounds because the original suit had never been commenced, since the city attorney had been served rather than the mayor or city clerk.

According to *Hughes*, the legislature adopted K.S.A. 60-203(b) to head off that sort of result by allowing proper service within 90 days after an adjudication that the original service was defective. 240 Kan. at 375-76. Kuhn's circumstance certainly seems to come within the intended purpose of K.S.A. 60-203(b). While Schmidt was not correctly served and so alleged in his answer, he did receive actual notice of the suit and timely answered, just as the City of Emporia did in *Dunn*. Neither Dunn nor Kuhn attempted to re-serve in response to the affirmative defense of insufficient service raised in the answer. Based on the plain language of K.S.A. 60-203(b) and the legislative intent to prevent outcomes like that in *Dunn*, Kuhn should have been allowed 90 days to re-serve Schmidt after the district court adjudicated the service legally inadequate. In short, Kuhn should not have suffered the same fate as Dunn. But she did. The reason lies in the judicial distortion of the statutory language and disregard of the legislative purpose begun in

*Grimmett*, 21 Kan. App. 2d at 647-48, and hardened into controlling precedent in *Pieren-Abbott*, 279 Kan. at 101-02.

### III.

To rein in a "liberal approach" to K.S.A. 60-203(b), the *Grimmett* panel engrafted three factors on to the statutory language: (1) "the original service must have appeared . . . valid," and the return of service must indicate valid service; (2) plaintiff must have held a good-faith belief service was valid and detrimentally rely on that belief; and (3) "the plaintiff had no reason to believe the defendant was contesting service until after the statute of limitations had run, but had no opportunity to take steps to correct the defective service." *Grimmett*, 21 Kan. App. 2d at 647-48. In addition, the panel required the defendant receive "actual notice of having been sued." 21 Kan. App. 2d at 647. That requirement is subsumed in the statutory language of K.S.A. 60-203(b), since the opportunity for reservice arises only after the original service has been adjudicated defective. Generally, it takes two to adjudicate. So the defendant necessarily would have entered the case to force the adjudication of the service and, thus, must have received notice of the suit in some fashion.

The three so-called *Grimmett* factors, however, appear to have been pulled out of thin air. The first factor requires the appearance of valid service, whatever that means, and a return containing a statement showing valid service. Nothing in the statutory language requires the service or the return appear valid on their face. Rather, service merely must "purport" to have been made. Had the legislature intended to confine K.S.A. 60-203(b) to circumstances in which the return recited a valid form of service when, in fact, service was accomplished through an improper means, it would have said so. For example, the legislature could have phrased the statute this way: "If service of process . . . purports to have been made *validly, as stated on the return,* but is later adjudicated to have been invalid . . . ." But the legislature didn't. In addition, the return in *Dunn*, 7 Kan. App. 2d at 446, did not purport to show legally proper service. It reflected service on the city attorney—a plainly improper means of service. The same was true in *Briscoe*, 204 Kan.

at 255-56, and *Bray*, 228 Kan. at 482-83. In each of those cases, the return showed service on an individual by delivering process to a secretary at the individual's place of business. Based on the first *Grimmett* factor, the plaintiffs in those cases would have been thrown out of court notwithstanding the adoption of K.S.A. 60-203(b). Yet, those cases illustrate outcomes the legislature intended to prevent in passing K.S.A. 60-203(b). In short, the first *Grimmett* factor undercuts what the legislature meant to accomplish, and it does so by embellishing the statutory language.

The second factor largely replicates the error of the first in that it requires the plaintiff to believe in good faith that service had been validly made. I suppose the panel actually means the plaintiff's lawyer. But I fail to see just how, for example, a lawyer might fairly believe that service of process on a city can be accomplished by delivering the papers to the city attorney when the governing statute plainly identifies the mayor and the city clerk as the only proper recipients. The legislature intended to protect plaintiffs, as litigants, from just that sort of technical misstep by their lawyers in serving process when those missteps can be readily corrected and do not materially impair defendants' ability to respond on the merits. See *Jenkins v. Arnold*, 223 Kan. 298, 299, 573 P.2d 1013 (1978) ("A litigant should not be unnecessarily penalized for the simple neglect of his agent or counsel."). Here, again, the *Grimmett* panel reads into K.S.A. 60-203(b) a good-faith requirement cannot be found in the statutory language. See *Unruh v. Purina Mills*, 289 Kan. 1185, 1201, 221 P.3d 1130 (2009) (The court declines to require that a defendant act in "bad faith" to support an award of attorney fees to a plaintiff under the Kansas Consumer Protection Act because the legislature included no such language in the applicable statute.). As the *Unruh* court stated: "If the legislature intended a bad-faith requirement, it could have included such language." 289 Kan. at 1201. Maybe a good-faith requirement in K.S.A. 60-203(b) would have been superior legislation. Maybe not. But it clearly wasn't what the legislature enacted. And it shouldn't be what the courts apply.

The final factor requires that the plaintiff not realize the defendant disputes the legal sufficiency of service until it's too late to

take any remedial action, *i.e.*, re-serving the defendant within the time period during which service will relate back to the filing date of the petition under K.S.A. 60-203(a). Seldom will that be true, and the requirement severely constricts the remedial impact of K.S.A. 60-203(b). Defects in the form of the process or its service, along with any resulting lack of personal jurisdiction over the defendant, must be asserted as defenses at the outset of the litigation or they are lost. K.S.A. 60-212(b), (h). A defendant may identify them in the answer or raise them in a motion filed before answering. K.S.A. 60-212(b). Either way, they are put in play during the earliest stages of a case. But they may not be adjudicated until much later, especially if they simply have been identified in the answer and are not briefed until the summary judgment phase.

Again, nothing in the language of K.S.A. 60-203(b) curtails the protection against dismissal for faulty service when a defendant promptly contests service. But the gloss of that factor effectively requires a plaintiff to re-serve a defendant in the abundance of caution if a defense of lack of personal jurisdiction, insufficiency of process, or insufficiency of service of process has been asserted in the answer. To do otherwise would tempt fate by risking a loss on that defense late in the case, after the limitations period had run, and having no recourse to K.S.A. 60-203(b) to serve the defendant at that point. With enactment of K.S.A. 60-203(b), a technical defect in service of process was supposed to become a fixable mistake during the course of litigation. The third *Grimmett* factor negates that objective and reduces the statutory right of a plaintiff to re-serve the defendant *after* an adjudication of defective service to empty words of little practical use.

By encouraging needless effort and expense in re-serving defendants, obviously already in and actively litigating cases, when they assert defenses based on defective service, the third factor runs counter to K.S.A. 60-102 recognizing that the Kansas Code of Civil Procedure should be construed "to secure the just, speedy and inexpensive determination of every action." And nothing would prevent a defendant from asserting any successive service of process to be legally deficient in a vaguely absurdist game in which a

plaintiff must either serve again or gamble service has been accomplished correctly.

## IV.

Applied as written, K.S.A. 60-203(b) avoids those machinations. Plaintiff serves process. Defendant responds and says service wasn't done right. The district court decides. If it rules for plaintiff, that's the end of the matter. If it rules for the defendant, plaintiff has 90 days to make proper service while the case continues. The process is sensibly and orderly; it aims to get at the merits of the legal dispute without undue wrangling over procedural technicalities. Basically, if a defendant has appeared and is litigating the case, he or she has suffered no real prejudice because of a technical defect in service. And the plaintiff should be given the opportunity to correct the error without suffering a substantial penalty. The *Grimmett* panel, in fact, suggested the purpose of K.S.A. 60-203(b) lies in giving a plaintiff "a second chance at service" if the original service has been declared invalid but nonetheless afforded defendant notice of the suit. *Grimmett*, 21 Kan. App. 2d at 647. But the factors the panel imposes on the statutory language bury that purpose.

I am not the first to question the appropriateness of the *Grimmett* factors. *Estate of Norris v. Hastings*, 36 Kan. App. 2d 479, 484-87, 141 P.3d 511, *rev. denied* 282 Kan. 788 (2006) (Knudson, J., dissenting). Recently, a panel of this court suggested without much elaboration the *Grimmett* factors distort the plain meaning of K.S.A. 60-203(b). *Fisher v. DeCarvalho*, 45 Kan. App. 2d 1133, 1153, 260 P.3d 1218 (2011); 45 Kan. App. 2d at 1155 (Pierron, J., concurring). In his dissent in *Estate of Norris*, Judge Knudson forcefully outlined the basic unfairness of welding those factors to the statutory language of K.S.A. 60-203 as immutable modifications. He found they often would require an outcome that "turns . . . K.S.A. 60-203(b) on its head." 36 Kan. App. 2d at 487. I would go further and suggest the factors have no place in construing or applying K.S.A. 60-203(b).

The *Grimmett* panel rationalized its judicial overhaul of K.S.A. 60-203(b) with an odd horrible: plaintiffs might get away with serv-

ing defendants with process by leaving the papers at bars, churches, or Arrowhead Stadium in gross disregard of any legal requirements. 21 Kan. App. 2d at 647. But it seems unlikely service in that manner would convey even actual notice of an action to a defendant. The defendant, having no notice of the action, would not respond, contest service, or trigger an adjudication of service under K.S.A. 60-203(b). By the same token, however, the plaintiff would be in no position to take a default against the defendant in the absence of legally sufficient service. See *Porter v. Wells Fargo Bank*, 45 Kan. App. 2d 931, 932, 935-36, 257 P.3d 788 (2011) (default judgment improperly entered when plaintiff never obtained valid service of process on defendant). So a plaintiff, having served in the manner feared in *Grimmett*, would have a suit on file but no defendant on the hook. And the statute of limitations clock would continue to tick because the action had not been commenced. On closer examination, the horrible doesn't seem all that horrible—certainly not fearsome enough to warrant jiggering K.S.A. 60-203(b).

That judicial tailoring runs counter to a pair of settled legal principles. First, of course, courts are not to stitch additional requirements onto statutes or snip away parts they view as poorly designed. *Robinson v. City of Wichita Retirement Bd. of Trustees*, 291 Kan. 266, Syl. ¶ 6, 241 P.3d 15 (2010) (The court "will not speculate on legislative intent and will not read the [statutory] provision to add something not readily found in it."); *Unruh*, 289 Kan. at 1201 (rejecting an argument that "asks the court to read into the statute language that is not present"). The Kansas Supreme Court encapsulated the rule of interpretation this way: "A statute should not be read to add that which is not contained in the language of the statute or to read out what, as a matter of ordinary language, is included in the statute." *Casco v. Armour Swift-Eckrich*, 283 Kan. 508, Syl. ¶ 6, 154 P.3d 494 (2007).

Second, the law favors determining legal disputes on their merits. See *McDaniel v. Southwestern Bell, Inc.*, 45 Kan. App. 2d 805, 809, 256 P.3d 872 (2011), *rev. denied* 293 Kan. 1107 (2012) ("It is the long-standing policy of our courts that the law favors the determination of disputed claims on the merits."). The proposition has often been stated in the context of lifting a default judgment

to allow a defendant to litigate the merits of the claim filed against him or her. *Jenkins*, 223 Kan. at 299 ("[A] court should resolve any doubt in favor of the motion [to set aside the default] so that cases may be decided on their merits."). In short, "[t]he law favors trial of causes upon the merits and looks with disfavor upon default judgments." *Sharp v. Sharp*, 196 Kan. 38, 41-42, 409 P.2d 1019 (1966). The irony is almost perverse. Properly served defendants, having done nothing to respond and facing defaults, may (at least sometimes) be rescued because the underlying legal disputes should be heard. That, after all, is what the judicial system strives to achieve. But plaintiffs who fail to obtain technically pristine service of process may be gamed out of their opportunity for judgments on the merits thanks to the *Grimmett* factors.

The Kansas Supreme Court picked up on the *Grimmett* factors and endorsed their use in construing K.S.A. 60-203(b) in an unusual context: measuring the legal sufficiency of the service of a driver's appeal to the district court from an administrative suspension of driving privileges. *Pieren-Abbott*, 279 Kan. 83, Syl. ¶¶ 2, 8. Nothing in *Pieren-Abbott* suggests the court intended to confine the factors to that particular circumstance. But neither did the court make any in-depth analysis of *Grimmett* or the soundness of its factors in traditional civil litigation. Nonetheless, a fair reading of *Pieren-Abbott* requires that the *Grimmett* factors be applied here. See *Estate of Norris*, 36 Kan. App. 2d at 483-84 (acknowledging *Pieren-Abbott* as controlling authority in personal injury action). And those factors, rather than the plain language of K.S.A. 60-203(b), mandate judgment against Kuhn.