No. 39,408

KANSAS-BOSTWICK IRRIGATION DISTRICT NO. 2, *Appellee* and *Cross Appellant,* v. CHARLES MIZER, et al., *Appellants* and *Cross Appellees.*

(270 P. 2d 261)

Opinion filed May 8, 1954.

*Jacob A. Dickinson,* of Topeka, argued the cause and *Edward Rooney, David Prager, William W. Dimmitt, Jr.,* and *Sam A. Crow,* all of Topeka, were with him on the briefs for the appellants.

*Fred Swoyer,* of Belleville, argued the cause, and *N. J. Ward,* of Belleville, was with him on the briefs for the appellee.

*Arno Windscheffel,* of Smith Center, was on the briefs for Kirwin Irrigation District as *amicus curiae.*

The opinion of the court was delivered by

SMITH, J.: This is one of a series of appeals involving various provisions and phases of G. S. 1949, 42-701 *et seq.* See *State, ex rel., v. Knapp,* 167 Kan. 546, 207 P. 2d 440, in which the constitutionality of the act was upheld generally. It was a quo warranto action by the state in the name of the attorney general. *Mizer v. Kansas Bostwick Irrigation District,* 172 Kan. 157, 239 P. 2d 370, was an injunction action brought by landowners in the district to enjoin the district from proceeding with an action to confirm a contract the district had entered into with the United States. In it the constitutionality of Chapter 304 of the Session Laws of 1951 was upheld. *Kansas-Bostwick Irrigation District v. Larson,* 173 Kan. 379, 245 P. 2d 1213, was the original action to confirm the contract. In

it the district court was directed to afford certain objectors to assessments an opportunity to file pleadings, to hear their complaints, as ordered in *Mizer v. Kansas Bostwick Irrigation District,* supra. This appeal is occasioned by the activities of both parties in attempting to frame the issues pursuant to the order in the latter case.

In order more clearly to state the legal questions with which we are presently confronted it will be wise to review as briefly as possible the points decided in the other cases.

G. S. 1949, 42-701 to 730, inc., provided for the organization of irrigation districts. G. S. 1949, 42-721 provided for the district entering into a contract with the United States for the construction of irrigation works and that such contract might provide for the payment of the cost thereof and for the levy and collection of assessments against the land benefited. It also contained a provision as follows:

"Provided no assessment shall be thus made against the lands of any person in district without said proposal or the contract providing therefor being first submitted to the electors of said district and approved by a majority of the electors of said district."

This section was amended by Chapter 304 of the Session Laws of 1951. That amendment provided as follows:

*"Provided,* That before any assessments shall be extended on the tax roll against any lands in the district, or the contract providing therefor becomes effective, the board of directors in the district shall file an action in the district court in which the greater part of said district is located, for the approval of any such contract and for the approval of the proposed assessments. A copy of the proposed schedule of assessments shall be attached to the petition or embodied therein. Service of process shall be deemed sufficient upon the publication of a notice in three issues, a week apart, in some newspaper of general circulation in the district. Said notice shall be addressed 'To the landowners of Irrigation District No._____ in _____County, Kansas:' (the number of the district and the name of the county to be filled in) and said notice shall state that a description of the various tracts of land in the district and the respective amounts of assessments proposed for each tract, as fixed by the board, may be examined in the office of the clerk of said district court. It shall not be necessary that the notice contain the description of the various tracts of real estate, or of the total real estate, within the boundaries of the district. Such notice shall specify a date not earlier than thirty days after the date of the first publication of said notice and not later than forty days thereafter within which any qualified owner of land within the district shall file his answer, or other pleadings, to said petition challenging the assessment against his property, if he believes a proposed assessment against his property is either: too high; erroneously computed; or not uniformly assessed in proportion to other tracts within the district. Upon trial of said cause, the court shall hear evidence concerning the correctness and uniformity of assessments and may modify the schedule of

assessments in accordance with such evidence. The court hearing such evidence shall review the schedule of assessments as proposed by the board of directors and shall not disturb the findings and assessments of the board unless the proposed assessments are manifestly disproportionate. The assessments as determined by the district court shall be final and a conclusive determination that all such proposed assessments have been made in proportion to the benefits conferred upon such properties by reason of the improvements to be constructed, and such assessments shall constitute a perpetual lien on the properties so assessed, until paid. The approval of the proposed contract by the trial court, together with any approved changes or modifications of the same, shall be final and binding upon the parties signatory to said contract. For the purpose of defraying the expenses of organizing the district and the maintenance, operation, management, repair and improvement of such irrigation works, including salaries of officers and employees, the board may collect water rentals or service charges, or may levy assessments therefor, or by a combination of methods."

It will be noted the amendment of 1951 substituted an action in the district court for the election provided for in the original act. It might be wise to note here that Section 36 of Part B of the contract, the confirmation of which this action seeks, provides:

"This contract shall not be binding upon the United States, nor shall any water be delivered pursuant to Part A of this contract until the proceedings on the part of the District for the authorization of the execution of this contract shall have been confirmed by decree of a court of competent jurisdiction or pending appellate action if ground or appeal be laid. Upon the execution of this contract, the District diligently shall prosecute to final conclusion such confirmation proceedings."

This action was filed by the district pursuant to G. S. 1949, 42-721, as amended by Chapter 304 of the Session Laws of 1951 quoted above. Before it was at issue *Mizer v. Kansas Bostwick Irrigation District,* supra, was begun. In it the plaintiff representing himself and other landowners in the district set out the proceedings up to that date and the pertinent statutes and asked that Chapter 305 of the Session Laws of 1951 be held unconstitutional and that the district be enjoined from proceeding any further with the action that was brought to secure confirmation of the contract. Thus we had a situation where there was pending an action specially authorized by a statute to secure confirmation of a contract and in the same court an action seeking to enjoin the parties from proceeding with the former action. The trial court heard the injunction action, found the act pursuant to which this action to confirm was brought to be unconstitutional and void, and granted the injunction. This judgment was appealed to us and we reversed the trial court. We held that neither G. S. 1949, 42-701 *et seq.* nor Chapter 304, Laws

of 1951 violated the constitution. (See *Mizer v. Kansas Bostwick Irrigation District*, supra.) While this appeal was pending the trial court stayed all proceedings in this action that had been brought to secure confirmation of the contract, pending the outcome of the injunction case. At that time various motions and demurrers were pending and undecided in the action to confirm.

Our order in the injunction case directed the trial court to dissolve the injunction and to proceed with the determination of that action and to determine whether any assessment as to any particular tract of land, which assessment was challenged in a pleading filed by the owner of that particular tract in due time was manifestly disproportionate and if it found no such assessment to be so manifestly disproportionate to confirm the contract.

On December 8, 1951, our decision was handed down. On January 5, 1952, Honorable W. D. Vance, the judge before whom all the proceedings were had, died. On January 25, plaintiffs in the action to confirm filed a motion for judgment and the matter was argued before the successor judge. On February 4, 1952, the court overruled all motions and demurrers filed by the defendant, sustained the motion of the district for judgment, entered an order confirming and approving the contract between the federal government and the district and held the proposed assessments as set out in the petition to be correctly and uniformly assessed.

On appeal we pointed out that while the proceedings were pending the parties, in colloquies between court and counsel, were given assurance that their right to file answers setting up any defenses would be fully preserved and protected and the judgment in question had the effect of cutting off these rights.

Our order in that case was that the judgment be reversed and the trial court was directed to proceed in accordance with the direction contained in the last paragraph of our decision in the injunction case, *Mizer v. Kansas Bostwick Irrigation District*, supra.

This brings us to the record in the instant appeal. The petition set out the organization of the district, the execution of a contract between the United States, a copy of which was attached to the petition, the estimated cost of the distribution system.

This petition contained an allegation as follows:

"9. Article 16 of the said contract provides for the apportionment of the construction charge for the distribution system, when the total charge has been determined, and which shall not exceed $3,500,000.00. Under such contract and laws applicable thereto, the construction charge is to be apportioned · to

three land classes, taking into account their soils, topography, productivity and benefits accruing thereto by reason of such irrigation system. The irrigable land within the district has been thus classified and the apportionment of the estimated cost of three million five hundred thousand dollars apportioned to such lands in accordance with such classifications. The law authorizes after the total cost has been exactly determined, and after the development period, that such lands may be reclassified, and such cost reapportioned in accordance with the then determined facts as to such lands, taking into account their soils, topography, productivity and benefits accruing thereto by reason of such irrigation.

"10. The maximum amount of $1.62 for each acre of irrigable land within the district is a reasonable amount for the water service to be furnished by the United States under said contract; but that amount may be less than such sum, depending upon the actual cost of materials, labor and other essentials that go into the determination of such charge for water service, and which annual charge cannot at this time be exactly determined.

"11. Attached hereto as Exhibit 3 is a schedule of the assessments for the payment of said $3,500,000.00 as assessed against the irrigable lands within the district in accordance with the land classes as provided in said contract, and which land classes have been determined as provided in Article 16 of said contract. Said Exhibit 3 sets forth the record owners of the land described and its classification and the number of acres in each of said classes of land; and that the total assessment is ascertained for each tract by multiplying the acres in class 1 by the sum of $108.00, the acres in class 2 by $73.00, and the number of acres in class 3 by $50.00. Said sums being the proportionate share that each of these classes of land should pay, in accordance with the Bureau's standards and taking into account the soils, topography and other relative conditions, including the benefits thereto by reason of the said irrigation works. That such payments are to be made annually for the forty year period beginning after the development period, as set forth in said contract, and all of which are in accordance with the laws applicable to such contract.

"12. Said Exhibit 3 sets forth the owners of said real estate within the district as shown in the offices of the Register of Deeds of Republic and Jewell Counties, or otherwise determined; and said Exhibit 3 sets forth the acreage of all lands and all irrigable lands in each of the said tracts set forth therein, together with the assessment against such tracts for the payment of the contract cost for such distribution system. Filed herewith, and made a part hereof, are two maps showing the lands within the district."

After our mandate in *Kansas-Bostwick Irrigation District v. Larson,* supra, reached the trial court the defendants filed a motion that the irrigation district be ordered to make its petition more definite and certain by attaching to its petition plans for the irrigation system, which plans should show in detail the main canals, lateral canals and other canals or ditches by which the water should be carried to the lands of each of the landowners in the district. The motion stated there were no plans available in the office of the clerk of the court which would enable the movants to determine the

benefits to be received from the proposed irrigation works nor could they determine whether such assessments were disproportionate or inequitable.

On November 16 this motion was sustained and the district was ordered to file any such plans, maps and specifications it had on which it based its proposed schedule of assessments.

In response to this order the district filed a pleading in which it stated it never had any such plans, maps and specifications, but caused the proposed schedule to be made from certain data furnished by the Bureau of Reclamation, which was filed as showing the plan and formula, whereby the assessments would be levied. The response further alleged the district would not have such information for the purpose of making assessments until such distribution works had been constructed and the five-year development period had expired and then the board would, as provided by law, classify the land to be irrigated and determine the benefits thereto; that the Bureau of Reclamation was conducting a survey and the board was informed the acreage to be irrigated would be considerably less than was contemplated; that the system would doubtless be built for block 1 first and when that was done and the five-year development period had expired, then the district would classify the irrigable land in accordance with law and submit to the interested landowners, as provided by law.

To this response the landowners filed a motion to dismiss the action on the ground that the district conceded it had no data whereby it might classify the land and there was no schedule of assessments which could be approved by the court and the approval of a proposed schedule of assessments was a condition precedent to the approval of the contract because there was no schedule having any proper basis which could be approved by the action or approval of the schedule of assessments and the contract had been prematurely brought and should be dismissed.

In answer to this motion to dismiss the district referred to our opinion in *State, ex rel., v. Knapp,* supra, where we stated:

"The defendant, Kansas Bostwick Irrigation District No. 2, is but a small part of the large project of the federal government authorized by the Act of Congress of December 22, 1944 (58 Stat. 887), pursuant to which the United States is constructing the Missouri River Basin Project as set forth in House Document 475 and Senate Document 191, as revised and coordinated by Senate Document 247, all of the 78th Congress, second session. (See 43 U. S. C. A. § 371 *et seq.,* including the above and related Acts of Congress.)"

On the same page this decision points out that these acts of congress became a part of the supreme law of the land and that the compact set forth in G. S. 1949, 82a-518, is binding upon the citizens of Colorado, Kansas and Nebraska, and "on the judicial and the executive branches of the state government."

The answer then pointed out various steps that had been taken and money that had been expended in construction of diversion dams and a main canal; that the obligations of the federal government to supply water to the district totaled $4,080,756, of which the greater portion had been paid, and the balance would be paid in the near future; that under the contract attached to the petition the district had agreed to take water and to pay the federal government a sum not exceeding $1.62 an acre; that such was the water part of the contract and was authorized by federal and state laws; that both the federal and state laws required court approval of the contract dealing with the distribution system; that this court pointed out in *State, ex rel., v. Knapp,* supra, that the federal law had been complied with and in reliance upon that decision the federal government had constructed a diversion dam and 28½ miles of main canal in Kansas; that the distribution system was a necessary part of the works authorized by the federal and state laws authorized by *State, ex rel., v. Knapp,* supra, and as a result the contract before the court was executed; that the board did not intend unless ordered to do so to use the schedule of assessments attached to the petition in determining the assessments to be levied against any of the land within the district nor to classify the land to be irrigated until the distribution works had been completed and five years had elapsed and the board will then so classify it.

An amendment to this answer then contained arguments as to why the position of the movants was not sound.

The trial court in a memorandum decision stated the position of the district to be that any approval of the schedule of assessments at that time would be premature but that the contract should be approved and the proposed amendments disregarded while protestants insisted that the approval of the contract was dependent upon the approval of the proposed assessments and they had insufficient information on which to base an intelligent objection that a tract or tracts were disproportionately assessed. The trial court pointed out that the jurisdiction of the court was limited to the duty of determining whether any assessment as to any tract of

land, which assessment was challenged in a pleading filed by the owner thereof was manifestly disproportionate. The court further stated:

"It appears that the legislature intended that the landowners within the District have some yardstick to measure the cost of construction of the Irrigation System and the number of acres chargeable therewith. In order to determine whether the proposed assessment of a particular tract or tracts, within said District, is disproportionate, it is necessary that they have access to more information than is now available. Once this is furnished by the Petitioner, this Court is limited to the determination of whether a tract or tracts are disproportionately assessed as set out in the schedule of proposed assessments if objection be filed in time. Once this is determined, then this Court must approve the contract."

The order of the court was that the motion to dismiss be overruled and that the district be directed to file maps showing the location of the distribution system as then proposed and an estimate of the proportionate cost of this construction and that the landowners within the district for twenty days thereafter may file individual answers objecting to the proposed assessments. In compliance with this order the district on September 11, 1953, filed maps showing the location of the distribution system then proposed in blocks 1 and 2; stated that the final location of the system as to block 3 had not yet been determined. Thereupon the objectors moved the court for an order striking the above maps from the files and to dismiss the action on the ground that the district had failed to comply with an order of September 11, 1953, and the movants further stated that no landowner was in a position at that time to determine the benefits to be derived from irrigation and they could not determine whether or not any assessments were disproportionate and could not plead to protect their rights as landowners. At the hearing of this motion the counsel for the district stated that the law did provide apparently that the court should make a final determination as to the assessments. He pointed out in the case of *Mizer v. Kansas Bostwick Irrigation District*, supra, this court stated the court should not make any final determination as to assessments. He further stated as follows:

"So as to clarify somewhat the situation, at this time I'm making this request and offer on behalf of the District; to withdraw all requests heretofore made in the initial petition and otherwise for a final determination of the assessments as proposed in the schedule of assessments attached to the petition, but submit this proposed schedule of assessments as showing a correct plan in determining the assessments to be levied against the benefited lands to raise funds to pay

for the distribution system as provided in the contract, and now we request approval of the contract and the plan."

On October 8, 1953, the court in a memorandum decision found that the request of the district should be granted with the exception of that part of the motion seeking approval of the plan. The court further stated it could find no authority whereby the plan as requested by the district might be approved by the court; that that part of the motion was disallowed. The motion of the landowners for judgment was disallowed. The court stated that it was directed by us to determine whether or not any assessments as to any particular tract should be assessed, which assessment was challenged in a pleading filed in due time, was manifestly disproportionate and that if no such assessment was disproportionate to approve the contract. The court said the schedule of assessments was withdrawn by the landowners and left only the approval of the contract for consideration by the court and such could cause the landowners no surprise. The court stated:

"It is the opinion of the Court that the withdrawal, by said Petitioner, of the consideration of the schedule of assessments for the purpose of determining if any particular tract of land within said District was disproportionately assessed, eliminates one phase of the Mandate of the Supreme Court of Kansas, handed down in said action, and leaves for consideration of this Court, under said Mandate, only the approval of said Contract. It appears this Court has no alternative other than to approve the Contract. By virtue of the fact the special assessment question has been withdrawn, there can be no lien against lands within said District at this time for said special assessments."

The order of the court was that the contract between the landowners and the United States be approved.

The journal entry recited the steps which have been detailed here and adjudged that the request of the landowners to withdraw the request for final determination of assessments, as proposed in the schedule of assessments attached to the petition, should be granted but the request for approval of the plan as shown by the said schedule of assessments was not approved by reason that the court was without jurisdiction to approve such a plan and it was adjudged that the contract between the district and the United States was approved. The landowners appealed from the order of October 26 denying their motion to strike and dismiss and for judgment and that the district be required to recast its petition and from the order approving the contract and all adverse rulings. The district appealed from the judgment entered on

October 26, wherein the court refused to approve the plan as shown by the proposed schedule of assessments.

The specifications of error are that the court erred in overruling and denying the motion of the landowners to strike the maps from the files on October 15, 1953, and in overruling appellants' motion to dismiss the action; in overruling the motion of appellants for judgment after withdrawal of the schedule of assessments or in the alternative that the petitioner be required to recast its petition upon the withdrawal of its prayer for the approval of the proposed assessments; and in approving the contract between the district and the United States.

The appellants take the position that G. S. 1951 Supp., 42-721, must be literally and strictly followed. They point out, the section provides for the approval of the contract and of the schedule of assessments. They then argue that since we in *Mizer v. Kansas Bostwick Irrigation District*, supra, directed the trial court to proceed to determine whether any assessment as to any particular tract of land, which assessment was challenged in a pleading filed by the owner, was manifestly disproportionate and if the court found no such assessment to be manifestly disproportionate to approve and confirm the contract, and since the district concedes that none of the assessments attached to the petition can become final until five years after the completion of the system, then the approval of a proposed schedule of assessments by the district court is a condition precedent to the approval of the contract, the statute is unworkable and the entire plan must fail.

This argument fails to take into consideration all the various statutes and the elements as referred to in *Mizer v. Kansas Bostwick Irrigation District*, supra, where we said:

"Chapter 304 of the Laws of 1951 in a provision, the validity of which is not questioned, provides that 'any irrigation district may enter into an agreement with the United States or any department, bureau or agency thereof in pursuance of the federal laws governing such department, bureau or agency.' All the pertinent federal statutes, the compact between Kansas, Nebraska and Colorado, the contract between the district and the United States, G. S. 1949, 42-701 to 42-730, and chapter 304 of the Laws of 1951, must be construed together. It is our duty to uphold legislation, rather than to defeat it, and if there is any reasonable way to construe legislation as constitutionally valid it should be so construed."

See, also, *State, ex rel., v. Knapp*, supra, where we said:

"Before taking up the specific questions submitted for determination by the stipulation we must take note of the fact that the defendant, Kansas Bostwick Irrigation District No. 2, is but a small part of the large project of the

federal government authorized by the Act of Congress of December 22, 1944 (58 Stat. 887), pursuant to which the United States is constructing the Missouri River Basin Project as set forth in House Document 475 and Senate Document 191, as revised and co-ordinated by Senate Document 247, all of the 78th Congress, second session. (See 43 U. S. C. A. § 371 *et seq.*, including the above and related Acts of Congress.)"

In speaking of paying the cost of construction of the system we said:

"The only question is how this will be apportioned amongst the various tracts in the district. The entire matter is left to reassessment every year. It is a matter of the internal affairs of the district and cannot be settled with finality at the trial upon the petition to confirm or approve the contract."

The whole trouble is a misunderstanding of the meaning of "schedule of assessments" and "manifestly disproportionate" as used in G. S. 1951 Supp., 42-721. For a proper understanding of these terms we must turn to the contract, this action is brought to confirm. Section 16a of that contract provides as follows:

"There shall first be a determination of the average per acre charge required to retire the local cost of constructing the distribution system, which shall be computed by dividing the cost estimate of constructing the distribution system of not to exceed $3,500,000.00 by the acreage of irrigable lands within the district."

That section provides the first step in determining the share each landowner shall pay toward the construction cost of the system, shall be to divide the cost of the construction by the number of irrigable acres in the district. Then as to each particular tract, this result is multiplied by the number of acres. Such is the schedule of assessments which was attached to the petition. The term "manifestly disproportionate" means whether this formula was correctly applied as to each particular tract.

The next paragraph of the contract provides for a computation of a proper variation in such average charge by land classes to be weighed by consideration of soils, topography and other relevant conditions. The contract then contains the following paragraph, 16c:

"The total construction charge for distribution system to be paid by any irrigation block shall be computed by adding the sum of the products of the acres in each land class in the block multiplied by the weighted payment per acre determined in Step 'b' foregoing."

Next we have the development period of five years and the provision that the first construction charge obligation shall accrue in the calendar year immediately following the last year of the develop-

ment period, that is, there can be no finality as to any assessment until five years after the system is finished. This provision must be considered in connection with G. S. 1949, 42-715, which provides for a uniform assessment of all lands in the district in March of each year and G. S. 1949, 42-717, which provides for an equalization of these assessments in May of each year.

It is true G. S. Supp. 1951, 42-721, provides for the approval of the "schedule of assessments" and that:

"The assessments as determined by the district court shall be final and a conclusive determination that all such proposed assessments have been made in proportion to the benefits conferred upon such properties by reason of the improvements to be constructed, and such assessments shall constitute a perpetual lien on the properties so assessed, until paid."

This provision, however, must give way to the provisions of the federal statute, the contract and other provisions of the state statute. It is our duty to so construe a statute as to accomplish the obvious will of the legislature. It follows that the order of the trial court of November 19, 1953, in answer to defendants' motion to require the district to make its petition more definite and certain, directing the district to file with the clerk of the district court such plans, maps and specifications as it has on which was based its proposed schedule of assessments attached to the petition was erroneous and should not have been made. All that took place in this action subsequent to that order is a nullity except the portion of the judgment that approved the contract. This so-called action is actually a special proceeding. See G. S. 1949, 60-105.

The trial court is ordered to proceed to determine whether the formula provided for in paragraph 16a of the contract as to any tract of land in the district, which has been challenged in a pleading filed in due time is manifestly disproportionate and if not, to approve the schedule of proposed assessments. This inquiry should be limited to a consideration of whether the formula heretofore discussed in this opinion was followed.

This contract was executed on April 20, 1951. Litigation has prevented the construction of this system for three years. The case is becoming a public nuisance. It is hoped that this chapter will put an end to it.

The judgment of the trial court approving the contract is affirmed, the judgment approving the withdrawal of the request for a final determination of the schedule of assessments is reversed, in accordance with the views stated in this opinion.