No. 104,644

MELANIE A. FISHER, *Appellant*, v. ALEX F. DECARVALHO, M.D., *Appellee*.

(314 P.3d 214)

Opinion filed December 13, 2013.

*David R. Morantz*, of Shamberg, Johnson & Bergman, Chtd., of Kansas City, Missouri, argued the cause, and *Lynn R. Johnson*, of the same firm, was with him on the briefs for appellant.

*Trevin E. Wray*, of Holbrook & Osborn, P.A., of Overland Park, argued the cause, and *Janet M. Simpson*, of the same firm, was with him on the brief for appellee.

The opinion of the court was delivered by

JOHNSON, J.: Melanie A. Fisher attempted to commence a medical malpractice action against Alex F. DeCarvalho, M.D., by mailing the summons and petition via unrestricted certified mail, sent to the doctor's business address. The doctor actually received the petition and filed an answer that asserted several affirmative defenses, including insufficiency of process, lack of personal jurisdic-

tion, and a statute of limitations bar. After participating in the discovery process for a time, the doctor filed a motion to dismiss, alleging an absence of personal jurisdiction because Fisher's attempted certified mailing did not comply with the requirements of K.S.A. 60-304(a) to effect a valid service of process. The district court dismissed the lawsuit with prejudice, finding that Fisher had failed to substantially comply with the statutory requirements for service of process by return receipt mail delivery, that the defendant's actual notice of the lawsuit did not confer personal jurisdiction on the district court absent a proper service of process, and that Fisher was not entitled to the additional time to effect service after the adjudication of invalidity, pursuant to K.S.A. 60-203(b), because her initial attempt at service did not appear to be valid, as required by *Grimmett v. Burke*, 21 Kan. App. 2d 638, Syl. ¶ 4, 906 P.2d 156 (1995), *rev. denied* 259 Kan. 927 (1996). The Court of Appeals affirmed the district court's dismissal in *Fisher v. DeCarvalho*, 45 Kan. App. 2d 1133, 260 P.3d 1218 (2011), and we granted review.

We agree with the results reached below on the issues of substantial compliance and actual notice, but we find that Fisher should have been afforded the opportunity, within the time limits set forth in K.S.A. 60-203(b), to attempt to effect a valid service of process after the district court's adjudication of invalidity. We reverse and remand with directions for the district court to afford the plaintiff that opportunity.

## FACTUAL AND PROCEDURAL OVERVIEW

On October 1, 2007, Dr. DeCarvalho performed an arthroscopic procedure on Fisher's right knee. Unsatisfied with the result, Fisher filed a medical malpractice lawsuit against the doctor 2 years later, on October 1, 2009. Fisher elected to obtain service of process on the defendant by mail, rather than personal service, ostensibly to avoid disrupting the doctor's medical practice. Accordingly, on November 30, 2009, after requesting and receiving a summons from the district court clerk's office, Fisher's counsel mailed the summons and petition to the doctor's medical office by unres-

tricted certified mail, *i.e.*, the mail did not direct that delivery was to be made only to the addressee, Dr. DeCarvalho.

On December 14, 2009, Fisher filed a return of service with the district court that included a return receipt on the certified mail reflecting that an individual named Phyllis Bieker had signed for the envelope on December 2, 2009. The return of service did not indicate Bieker's relationship to the defendant or explain why she was authorized to accept service of process on his behalf.

Nevertheless, the defendant does not deny that he had actual notice of the lawsuit, and he filed an answer to the petition on January 4, 2010, after requesting and receiving a 10-day clerk's extension. In his answer, the defendant asserted several affirmative defenses, including insufficiency of process, lack of personal jurisdiction, and a violation of the statute of limitations. On March 1, 2010, the defendant served Fisher with interrogatories and a request for production of documents. Two days later, the defendant responded to plaintiff's discovery requests.

The following month, on April 26, 2010, the defendant filed a motion to dismiss for lack of personal jurisdiction, arguing that Fisher had failed to effect proper service of process prior to the expiration of the statute of limitations. Specifically, the defendant claimed that the initial attempt at service by certified, unrestricted mail at his place of business was invalid because it did not comply with the requirements for service by return receipt delivery to an individual set forth in K.S.A. 60-304(a).

In response, Fisher argued that the provisions of K.S.A. 60-204 validated the service of process because she had substantially complied with the requirements of K.S.A. 60-304(a). Additionally, she asserted that the defendant had actual knowledge of the lawsuit, as evidenced by his timely answer to the petition and his active participation in the discovery process, which established that the purpose of the service of process had been fulfilled. In the alternative, Fisher contended that even if the district court adjudicated her initial service of process to be invalid, she was entitled to an additional 90 (or 120) days after the invalidity adjudication to effect valid service, as provided in K.S.A. 60-203(b).

On May 26, 2010, the district court found in favor of the defendant and dismissed the lawsuit with prejudice. En route to that disposition, the district court rejected Fisher's assertion that she had substantially complied with the statutory requirements for mail service and, therefore, the court held that she was not entitled to the validation benefit of K.S.A. 60-204. Further, the district court opined that the defendant's actual notice of the lawsuit was not enough to confer personal jurisdiction upon the court in the absence of a proper statutory service of process. Finally, the district court found that Fisher was not entitled to the additional time to effect service after the court's invalidity adjudication, as specifically provided in K.S.A. 60-203(b), because the initial service of process in this case did not meet *Grimmett*'s requirement of facial validity. See *Grimmett*, 21 Kan. App. 2d at 647-48.

On appeal to the Court of Appeals, Fisher focused on three arguments. First, she continued to argue that her service upon the defendant substantially complied with the statutory method for effecting service of process by return receipt delivery, so that the initial service was statutorily defined as valid under K.S.A. 60-204. Second, for the first time on appeal, Fisher argued that pursuant to K.S.A. 60-303(e), the defendant voluntarily acknowledged service by appearing in the action through his pleadings and discovery. For her third argument, Fisher asserted that even if the initial service was invalid, the plain language of K.S.A. 60-203(b) provided her an additional time—at least 90 days after the court determination of invalidity—to cure the defect(s) through another, valid service of process.

The Court of Appeals affirmed the district court's dismissal with prejudice. First, comparing Fisher's attempted mail service against the specific requirements clearly set forth in K.S.A. 60-304(a), the panel opined that plaintiff's efforts fell well short of this court's definition of "substantial compliance" in *Myers v. Board of Jackson County Comm'rs*, 280 Kan. 869, 874, 127 P.3d 319 (2006), so that the attempted service of process could not be deemed valid under K.S.A. 60-204. *Fisher*, 45 Kan. App. 2d at 1147.

Second, the Court of Appeals exercised review over Fisher's argument regarding a voluntary entry of appearance under K.S.A.

60-303(e), notwithstanding her raising that issue for the first time on appeal. But the panel relied on *Haley v. Hershberger*, 207 Kan. 459, 485 P.2d 1321 (1971), *superseded by statute on other grounds as stated in Myers*, 280 Kan. at 875, for the proposition that the filing of a motion for extension of time to answer a petition does not waive an insufficiency of service of process defense. Therefore, because the defendant's other participation in the lawsuit occurred after the action was barred by the statute of limitations, those appearances did not cure the faulty service of process. *Fisher*, 45 Kan. App. 2d at 1148-49.

Finally, the Court of Appeals rejected Fisher's argument that she was entitled to an additional 90 days to effect valid service of process under K.S.A. 60-203(b). 45 Kan. App. 2d at 1152-53. Although the panel expressed concern over *Grimmett's* "judicially created" requirements for the application of K.S.A. 60-203(b), the panel nevertheless concluded that the statute's plain language made it inapplicable in Fisher's case. 45 Kan. App. 2d at 1153-55.

This court granted Fisher's petition for review under K.S.A. 20-3018(b), obtaining jurisdiction under K.S.A. 60-2101(b).

SUBSTANTIAL COMPLIANCE WITH MAIL SERVICE OF PROCESS

Fisher acknowledges that her service of process may have been technically flawed in relation to the requirements of K.S.A. 60-304(a). But she claims that her compliance with the certified mail method of serving process was substantial enough to invoke the saving provision of K.S.A. 60-204, which states, in relevant part:

"In any method of serving process, substantial compliance therewith shall effect valid service of process if the court finds that, notwithstanding some irregularity or omission, the party served was made aware that an action or proceeding was pending in a specified court in which his or her person, status or property were subject to being affected."

Here, the defendant, being "the party served," does not dispute that he "was made aware that an action or proceeding was pending in a specified court in which his . . . person, status or property were subject to being affected." K.S.A. 60-204. Moreover, the parties do not contest the facts applicable to the manner in which Fisher served the process. Consequently, our task is to review whether

the actions taken by Fisher constitute "substantial compliance" within the meaning of K.S.A. 60-204.

*Standard of Review*

Defining and applying the statutory concept of substantial compliance will necessarily involve statutory interpretation, over which we exercise de novo review. See *Jeanes v. Bank of America,* 296 Kan. 870, 873, 295 P.3d 1045 (2013).

*Analysis*

Although some of the applicable statutes have been amended since Fisher attempted to commence her lawsuit, the parties argue and we apply the statutes in effect at the time of the attempted service of process. Then, K.S.A. 60-303 described the methods of service of process that could be used within this state. One of the acceptable methods was "service by return receipt delivery," which included "service effected by certified mail . . . evidenced by a written or electronic receipt showing to whom delivered, date of delivery, address where delivered, and person or entity effecting delivery." K.S.A. 60-303(c).

In addition, K.S.A. 60-304, entitled "Service of process, on whom made," provided further directions. With respect to individuals, other than minors or disabled persons, service could be made "by serving the individual or by serving an agent authorized by appointment or by law to receive service of process." K.S.A. 60-304(a). Moreover, K.S.A. 60-304(a) provided specific instructions for the use of service by return receipt delivery for an individual party, to-wit:

"Service by return receipt delivery shall be addressed to an individual at the individual's dwelling house or usual place of abode and to an authorized agent at the agent's usual or designated address. If service by return receipt delivery to the individual's dwelling house or usual place of abode is refused or unclaimed, the sheriff, party or party's attorney seeking service may complete service by certified mail, restricted delivery, by serving the individual at a business address after filing a return on service stating the return receipt delivery to the individual at such individual's dwelling house or usual place of abode has been refused or unclaimed and a business address is known for such individual."

K.S.A. 60-103 defines restricted mail as including the endorsement on its face to "deliver to addressee only." In other words, a summons and petition addressed to Dr. DeCarvalho and sent certified mail, restricted delivery, would state on its face that it should be delivered only to Dr. DeCarvalho.

To reiterate and emphasize the point, if Fisher's actions substantially complied with the foregoing statutory requirements for that method of service, then K.S.A. 60-204 declares that she effected "valid service of process." No further inquiry would be necessary.

The service of process that Fisher attempts to validate in this appeal was sent to the defendant's medical clinic by unrestricted certified mail. The Court of Appeals described the statutorily prescribed steps that should be followed to effect service by return receipt delivery at an individual's *business address*:

"[A]n individual may only be served at a business address by certified mail if the following conditions have been satisfied: (1) the plaintiff first attempts to serve the individual by return receipt delivery at the individual's dwelling house or usual place of abode; (2) the plaintiff files a return on service indicating that delivery at the individual's dwelling house or usual place of abode was refused or unclaimed; and (3) the certified mail is then sent to the business address via restricted delivery." *Fisher*, 45 Kan. App. 2d at 1140.

The panel then agreed with the district court's assessment that Fisher had failed to satisfy any of those statutory prerequisites for business address service. She did not make an initial attempt to serve the defendant at his dwelling house or usual place of abode; she did not file a return on service indicating that delivery at the doctor's dwelling house or usual place of abode was refused or unclaimed; and she did not make certified mail service to the doctor's business address by restricted delivery, *i.e.*, she did not restrict delivery to the addressee only. 45 Kan. App. 2d at 1140-41. In addition, the panel noted that Fisher had failed to ascertain whether the person who signed the return receipt—Phyllis Bieker—was authorized to accept service on behalf of the defendant. 45 Kan. App. 2d at 1141.

Noting that the term "substantial compliance" is not statutorily defined, the panel looked at the meaning this court had given the

term in *Myers*, 280 Kan. at 874. *Myers* addressed substantial compliance in the context of assessing the validity of a tort claimant's notice to a municipality under K.S.A. 12-105b. A review of prior cases led the *Myers* court to adopt the following description of substantial compliance: " ' " 'compliance in respect to the essential matters necessary to assure every reasonable objective of the statute.' " ' " 280 Kan. at 874 (quoting *Orr v. Heiman*, 270 Kan. 109, 113, 12 P.3d 387 [2000]). The panel in this case opined that "due to the similarity in the purpose of the two statutes, it is reasonable to conclude that the 'substantial compliance' language in K.S.A. 60-204 is to be defined in the same manner as in K.S.A. 2004 Supp. 12-105b(d)." *Fisher*, 45 Kan. App. 2d at 1142. The panel noted that the analogy had been utilized by a prior Court of Appeals panel in *Taylor ex rel. Gibbens v. Medicalodges, Inc.*, No. 102,539, 2010 WL 3324408 (Kan. App. 2010) (unpublished opinion), *rev. denied* 292 Kan. 969 (2011). 45 Kan. App. 2d at 1145.

Applying the *Myers* standard, the panel reiterated all of the ways in which Fisher had failed to follow the statutory directive for mail service at a business address, but it principally relied on the fact that "service was not actually made upon DeCarvalho or his authorized agent," which the panel declared to be "the most important objective of any method of service of process." 45 Kan. App. 2d at 1142-43. Accordingly, the panel concluded that, by failing to assure that service was actually made on the defendant or his authorized agent, Fisher failed to substantially comply with the method of service set forth in K.S.A. 60-304(a). Consequently, without substantial compliance, the attempted service of process could not be deemed valid under K.S.A. 60-204. *Fisher*, 45 Kan. App. 2d at 1147.

We agree with the Court of Appeals' approach of viewing K.S.A. 60-204's validation provision through the lens of the *Myers* definition of substantial compliance, *i.e.*, " ' " 'compliance in respect to the essential matters necessary to assure every reasonable objective of the statute.' " ' " 280 Kan. at 874. In doing so, we are not unmindful that some prior cases from this court have held that service of process upon a secretary or office manager at a place of business was not sufficient compliance to invoke the validation provision of

K.S.A. 60-204. See *Haley*, 207 Kan. at 463, *Thompson-Kilgariff General Insurance Agency, Inc. v. Haskell*, 206 Kan. 465, 467-68, 479 P.2d 900 (1971), and *Briscoe v. Getto*, 204 Kan. 254, 257, 462 P.2d 127 (1969). The underlying rationale in those cases was that K.S.A. 60-204 was not intended to create new methods of serving process. See, *e.g.*, *Briscoe*, 204 Kan. at 257 (new method of service cannot be originated by K.S.A. 60-204).

But unlike the statutory scheme applicable to *Briscoe* and its progeny, the version of K.S.A. 60-304(a) applicable here specifically permitted Fisher to make service by return receipt delivery to the defendant's business address, so long as she fulfilled certain conditions. Consequently, no new method of service is being originated here. Rather, the conditions Fisher failed to meet on an existing method of service are being reviewed to determine whether they were necessary to assure the reasonable objectives of that statutory method of service, *i.e.*, whether Fisher failed to substantially comply with the existing method of service.

In applying the *Myers'* test for substantial compliance, the panel opined that the most important objective of any service of process method is to actually serve the defendant or the defendant's authorized agent. *Fisher*, 45 Kan. App. 2d at 1147. We might quibble with that statement's overbreadth. We read the statutory language as suggesting that the legislature believed that the paramount objective of any method of service of process is that "the party served was made aware that an action or proceeding was pending in a specified court in which his or her person, status or property were subject to being affected." K.S.A. 60-204. In some circumstances, *e.g.*, notice by newspaper publication, actual service upon the defendant or authorized agent may not be an essential matter necessary to accomplish the reasonable objective of proper notification. Nevertheless, we do agree with the panel that the legislature intended that, where service is made on an individual by return receipt delivery to a business address, actual service on the defendant or his or her authorized agent is an essential matter that is necessary to assure the objective that the individual receive appropriate notice. The special requirement that the certified mail

be sent by restricted delivery to a business address can mean nothing else.

In sum, we agree with the panel and the district court on the question of whether Fisher substantially complied with the method of service by return receipt delivery to an individual at a business address. Fisher simply failed to meet those essential conditions that were necessary to assure that the defendant would be made aware that an action or proceeding was pending in a specified court in which his property was subject to being affected. The defendant's fortuitous acquisition of that awareness does not affect our calculus. K.S.A. 60-204's validation must emanate from the serving party's actions. Here, Fisher's actions were inadequate to be substantially compliant with K.S.A. 60-304(a) and, in turn, the service of process was not valid under K.S.A. 60-204.

### VOLUNTARY APPEARANCE

One of Fisher's complaints is that Dr. DeCarvalho engaged in procedural gamesmanship by appearing to fully participate in the lawsuit until such time as his challenge to the defective service of process would result in a dismissal with prejudice because of the statute of limitations. As noted, on appeal, Fisher attempts to use K.S.A. 60-303(e) to keep the doctor in the game to answer on the merits. That subsection of the statute dealing with the methods of service of process states: "An acknowledgment of service on the summons is equivalent to service. The voluntary appearance by a defendant is equivalent to service on the date of appearance." K.S.A. 60-303(e). Fisher contends that the doctor voluntarily appeared when he obtained an extension of time to answer, filed an answer to the petition, and then actively participated in the discovery process. Despite the seductive logic of that argument, it is not supported by our caselaw.

### Standard of Review

An interpretation and application of K.S.A. 60-303(e) presents us with a question of law over which we have unlimited review. See *Jeanes*, 296 Kan. at 873.

*Analysis*

We first briefly address the preservation of this issue. The Court of Appeals acknowledged that this issue was being raised for the first time on appeal, which would normally preclude its consideration. But citing to *In re Care & Treatment of Miller*, 289 Kan. 218, 224-25, 210 P.3d 625 (2009), the panel invoked the exception to the general rule for a newly asserted theory that involves only a question of law arising on proved or admitted facts and that is finally determinative of the case. *Fisher*, 45 Kan. App. 2d at 1148. The defendant did not seek review of that holding. Accordingly, we will likewise consider the argument.

Before discussing K.S.A. 60-303(e), we pause to review the relationship between service of process and the applicable statute of limitations on Fisher's medical malpractice action. Under K.S.A. 60-513(a)(7), the statute of limitations was 2 years, making her petition timely filed on the 2-year anniversary of her alleged injury. But a lawsuit is not properly commenced until service of process is obtained and, except for an extension for good cause shown, that service must occur within 90 days of the filing of the petition for the commencement date to be deemed the filing date of the petition; otherwise, the action is deemed commenced when service of process is completed. K.S.A. 60-203(a). In this case, Fisher had to complete service of process by December 30, 2009, in order for her lawsuit to be deemed to be commenced on October 1, 2009, *i.e.*, to avoid being barred by the 2-year statute of limitations.

The defendant obtained a 10-day extension of time to file a responsive pleading on December 23, 2009; he filed an answer to the petition on January 4, 2010; and he thereafter participated in discovery until filing his motion to dismiss on April 26, 2010. If the doctor's extension request was a "voluntary appearance by a defendant" within the meaning of K.S.A. 60-303(e), then that appearance was the equivalent of service being effected on or before December 23, 2009, which would be prior to the December 30, 2009, service of process deadline to relate back the commencement of the action to the filing date. In other words, the defendant's statute of limitations challenge would fail. If Fisher must rely on

the defendant's January 4, 2010, answer or other subsequent actions in the proceeding to establish the date of the defendant's voluntary appearance, and correspondingly to establish the date of service under K.S.A. 60-303(e), then the commencement of the action would not relate back to the filing date and Fisher's lawsuit would not comply with the statute of limitations.

The Court of Appeals relied on the 40-year-old decision in *Haley* to find that the defendant's extension request was not a voluntary appearance within the meaning of K.S.A. 60-303(e). *Fisher*, 45 Kan. App. 2d at 1149. *Haley* held that "[a] motion for extension of time to answer, . . . may not be regarded as a waiver of lack of jurisdiction of the person of defendant because of insufficiency of process, or insufficiency of service of process." 207 Kan. 459, Syl. ¶ 4. *Haley* opined that K.S.A. 60-212 abolished the "old distinction between general and special appearances" and now provides that a defendant only waives the defense of lack of personal jurisdiction by failing to assert the defense in a 60-212 motion or in the answer. 207 Kan. at 465. In other words, a defendant retains the right to challenge personal jurisdiction up to the time that the defendant files his or her answer to the petition.

Fisher argues that *Haley* was decided prior to the enactment of K.S.A. 60-303(e) and we should employ the presumption that a legislative revision of existing law presupposes that the legislature intended to change the law as it existed prior to the amendment. See *Ft. Hays St. Univ. v. University Ch., Am. Ass'n of Univ. Profs*, 290 Kan. 446, 464, 228 P.3d 403 (2010). That argument evaporates when one discovers that K.S.A. 60-303(e) merely effected a relocation of the provision that was previously part of K.S.A. 60-304(h). See L. 1990, ch. 202, secs. 4 and 5. When *Haley* was decided, K.S.A. 60-304(h) provided: "An acknowledgment of service on the summons, or the voluntary general appearance of a defendant, is equivalent to service." See L. 1970, ch. 235, sec 1. In other words, the *Haley* court reached its decision in spite of a savings provision that equated a party's voluntary general appearance with service of process. Thus, we decline to declare that the legislature intended to change the law or to overrule *Haley* by enacting K.S.A. 60-303(e).

We do acknowledge that *Haley*'s abolition of the distinction between a special appearance and a general appearance is rendered somewhat illusory by its holding that a defendant does not waive a personal jurisdiction challenge until after the answer is filed. If a defendant files an answer to a petition without having been served a summons, one who employs common meanings for common words would have to view that action as a "voluntary appearance" by a party. Yet, if filing an answer is truly a voluntary appearance (and there are no longer any special appearances), K.S.A. 60-303(e) would equate that action with a service of process, thus curing the defense of insufficiency of service of process that *Haley* says is not waived until after the answer is filed. In other words, the act of raising the defense negates the defense, even though the defendant has not waived the defense. But we have a canon of construction that directs us to construe statutes to avoid unreasonable or absurd results, based upon a presumption that the legislature does not intend to enact meaningless legislation. See *Northern Natural Gas Co. v. ONEOK Field Services Co.*, 296 Kan. 906, 918, 296 P.3d 1106 (2013). Moreover, the *Haley* holding has been good law for decades. See *Pieren-Abbott v. Kansas Dept. of Revenue*, 279 Kan. 83, 100, 106 P.3d 492 (2005) (citing to *Haley*). Accordingly, we overlook any logical disconnect and follow the precedent that requesting an extension of time to file an answer is not a waiver of defendant's challenge to personal jurisdiction based upon an insufficiency of the service of process, notwithstanding the provisions of K.S.A. 60-303(e).

### ADDITIONAL TIME TO EFFECT SERVICE PURSUANT TO K.S.A. 60-203(b)

Finally, Fisher argues that, even if the district court correctly invalidated her initial service of process, the plain language of K.S.A. 60-203(b) allowed her an additional 90 days after the invalidity adjudication in which to obtain valid service of process. We agree.

*Standard of Review*

Once again, this issue involves statutory interpretation, which is subject to unlimited review by this court. See *Jeanes*, 296 Kan. at 873.

*Analysis*

The provisions of K.S.A. 60-203(b) applicable here state:

"If service of process or first publication purports to have been made but is later adjudicated to have been invalid due to any irregularity in form or procedure or any defect in making service, the action shall nevertheless be deemed to have been commenced at the applicable time under subsection (a) if valid service is obtained or first publication is made within 90 days after that adjudication, except that the court may extend that time an additional 30 days upon a showing of good cause by the plaintiff."

The provision was originally proposed by the Kansas Judicial Council in response to the holdings in such cases as *Haley* and *Bray v. Bayles*, 228 Kan. 481, 484-85, 618 P.2d 807 (1980), both of which found defective service of process where the petition and summons were served upon business secretaries or receptionists. See February 9, 1983, Minutes of the House Committee on Judiciary. This court would subsequently observe that the 1983 version of K.S.A. 60-203(b) was enacted for the express purpose of correcting the injustice that existed in cases where the service was defective, the defendant knew of the action through the faulty process but did not make any substantive objection to the defective service until after the time for service had passed, and the statute of limitations had run. See *Hughes v. Martin*, 240 Kan. 370, 374, 729 P.2d 1200 (1986).

A decade later, a panel of the Court of Appeals opined in *Grimmett v. Burke*, 21 Kan. App. 2d 638, 906 P.2d 156 (1995), *rev. denied* 259 Kan. 927 (1996), that the intended curative effects of K.S.A. 60-203(b) should be narrower than the plain language would indicate. The panel believed that the statute could be construed in two ways:

"[O]ne is extremely liberal and the other appears to be a commonsense approach. A very liberal construction gives the plaintiff a second chance at service. It would establish that a plaintiff *always* gets a second chance under 60-203(b) when his

or her original service has been determined invalid. This would be true no matter how inept or how lacking in good faith the original service may have been. In the extreme, a liberal approach of this nature would simply ignore the first service and extend the process far beyond applicable time frames. This approach would allow a party to simply leave a summons for John Doe at a bar, at a church, at Arrowhead Stadium, at the courthouse, or any other place and still insist that by doing so the party had 'purported' to serve a defendant. Such a liberal construction is ludicrous; we do not believe it was intended and will not adopt that approach. The purpose of K.S.A. 60-203(b) is to give a second chance at service to a party whose original service was declared invalid despite the fact that it gave the defendant notice of suit." 21 Kan. App. 2d at 647.

In order to avoid the results it perceived were ludicrous, the panel declared that before K.S.A. 60-203(b) can apply, the plaintiff must show that the defendant was given actual notice of having been sued. Then, the panel divined a list of factors that it said should exist, namely:

"(1) The original service must have 'appeared' to be valid and the returns by the sheriff's office or other process servers must indicate that the service was valid. (2) The record should show that the plaintiff believed in good faith that his or her service was valid and relied on that validity to his or her detriment. (3) The plaintiff had no reason to believe the defendant was contesting service until after the statute of limitations had run, but had no opportunity to take steps to correct the defective service." *Grimmett*, 21 Kan. App. 2d at 647-48.

The *Grimmett* panel then declared: "[B]y limiting the phrase 'purports to have been made' to those situations alluded to above, *we correct the problem 60-203(b) was passed to correct.*" (Emphasis added.) *Grimmett*, 21 Kan. App. 2d at 648. That assessment would prove to be woefully inaccurate. As the panel in this case observed, it was "unable to find a single published decision where the provisions of K.S.A. 60-203(b) were applied successfully to save a case from dismissal," after *Grimmett* judicially created its requirements. *Fisher v. DeCarvalho*, 45 Kan. App. 2d 1133, 1153, 260 P.3d 1218 (2011). That observation included the *Grimmett* case itself, where the panel found that the plaintiff could not pass its newly minted test for curing defective service. *Grimmett*, 21 Kan. App. 2d at 649. Instead of correcting the problem K.S.A. 60-203(b) was passed to correct, *Grimmett* exacerbated the problem.

Inexplicably, then, the Supreme Court adopted the *Grimmett* holdings without question. *Pieren-Abbott*, 279 Kan. 83, Syl. ¶ 8. That absence of critical analysis is curious, at best, given that *Grimmett* appeared to sidestep our canons of statutory construction.

The most fundamental rule of statutory construction is that the intent of the legislature governs if that intent can be ascertained. *Bergstrom v. Spears Manufacturing Co.*, 289 Kan. 605, 607, 214 P.3d 676 (2009). An appellate court must first attempt to ascertain legislative intent through the statutory language enacted, giving common words their ordinary meanings. *Northern Natural Gas Co.*, 296 Kan. at 918. When a statute is plain and unambiguous, an appellate court does not speculate as to the legislative intent behind it and will not read something into the statute that is not readily found in it. *In re Tax Appeal of Burch*, 296 Kan. 713, 722, 294 P.3d 1155 (2013). Perhaps most importantly, " 'the court cannot delete vital provisions or supply vital omissions in a statute.' " *Kenyon v. Kansas Power & Light Co.*, 254 Kan. 287, 292-93, 864 P.2d 1161 (1993) (quoting *Harris v. Shanahan*, 192 Kan. 183, 196, 387 P.2d 771 [1963]). In other words, no matter how ludicrous an appellate court may find a legislative enactment to be, the court is not free to completely rewrite the statute to make the law conform to what the court believes it should be.

To reiterate, the statute provides a plaintiff with an additional time to obtain service of process on a defendant under the following circumstances: "If service of process or first publication purports to have been made but is later adjudicated to have been invalid due to any irregularity in form or procedure or any defect in making service." K.S.A. 60-203(b). *Grimmett's* condition precedent that the plaintiff must show that the defendant was given actual notice of having been sued does not appear anywhere in K.S.A. 60-203(b). Likewise, the statute does not require an appearance of validity; it does not require the plaintiff to possess a good-faith belief that the service was valid; and it does not purport to apply only where the plaintiff had no reason to believe the defendant was contesting service until after the statute of limitations had run and had no opportunity to correct the defective service.

In short, the plain language of the statute does not support *Grimmett*'s holdings.

Apparently, the *Grimmett* panel believed that it was invoking the general rule that courts should construe statutes to avoid unreasonable results and should presume that the legislature does not intend to enact useless or meaningless (or ludicrous) legislation. See *Southwestern Bell Tel. Co. v. Beachner Constr. Co.*, 289 Kan. 1262, 1269, 221 P.3d 588 (2009). But, as Judge Atcheson pointed out in his separate opinion in *Kuhn v. Schmidt*, 47 Kan. App. 2d 241, 255, 277 P.3d 1141 (2012) (Atcheson, J., concurring), the *Grimmett* panel's perceived "the sky will fall" absurdity was illusory. Should a plaintiff attempt to serve John Doe process by leaving papers at a bar, at a church, at Arrowhead Stadium, at a courthouse, or at any other place where the defendant is unlikely to receive it, then the defendant would not know about the lawsuit, the defendant would not challenge the sufficiency of the service, and the district court would not adjudicate the service to be invalid so as to trigger the applicability of K.S.A. 60-203(b). *Kuhn*, 47 Kan. App. 2d at 255. Similarly, the plaintiff would be unable to take default judgment against the defendant because the plaintiff would be unable to establish that service had been legally effected. 47 Kan. App. 2d at 255. In sum, as Judge Atcheson aptly noted: "On closer examination, the horrible doesn't seem all that horrible—certainly not fearsome enough to warrant jiggering K.S.A. 60-203(b)." 47 Kan. App. 2d at 255.

Rather than saving K.S.A. 60-203(b) from absurdity, the *Grimmett* factors actually tend to render that savings provision meaningless. If a plaintiff can jump through the *Grimmett* hoops, especially the requirement that the original service and return appear to be facially valid, then the plaintiff has most likely met the substantial compliance test of K.S.A. 60-204. In that event, the service is statutorily deemed to be valid, negating the requisite condition in K.S.A. 60-203(b) that the service be adjudicated invalid. In other words, if a plaintiff can meet the *Grimmett* factors to apply K.S.A. 60-203(b), the plaintiff probably does not need to use it.

Furthermore, as Judge Atcheson noted, K.S.A. 60-203(b) was enacted to change the result reached in such cases as *Briscoe* and

*Bray. Kuhn*, 47 Kan. App. 2d at 251-52. But in those cases, the returns did not indicate valid service on their face, so that construing the statute to require such facial validity would not have changed the result in those cases and, consequently, that construction does not accomplish what the legislature obviously wanted to do. Throwing up additional roadblocks to the accomplishment of legislative intent runs afoul of our duty to give effect to the will of the legislature. See *Kansas-Bostwick Irrigation District v. Mizer*, 176 Kan. 354, 365, 270 P.2d 261 (1954). In fact, the legislature has specifically told us that "[t]he provisions of [the code of civil procedure] shall be liberally construed and administered to secure the just, speedy and inexpensive determination of every action or proceeding." K.S.A. 60-102. Moreover, the law prefers that cases be decided on their merits rather than on technical compliance with procedural rules. See *Bazine State Bank v. Pawnee Prod. Serv., Inc.*, 245 Kan. 490, 495, 781 P.2d 1077 (1989) (In determining whether to set aside a default judgment, a court should resolve any doubt in favor of the motion so that the cases may be decided on their merits.). In that same context, courts are also encouraged to remember that litigants should not be unnecessarily penalized for the simple neglect of their attorney. *Jenkins v. Arnold*, 223 Kan. 298, 299, 573 P.2d 1013 (1978).

The panel in this case recognized that "Kansas cases applying the *Grimmett* factors have adopted an unnecessarily restrictive view of K.S.A. 60-203(b) that is not supported by the plain language of the statute." *Fisher*, 45 Kan. App. 2d at 1153. We agree and hereby disapprove of the *Grimmett* factors and the accompanying restrictive view of K.S.A. 60-203(b). The statute means what it says.

We begin our analysis of the plain language of K.S.A. 60-203(b) with the phrase "purports to have been made" and then factor in the phrases "any irregularity in form or procedure" and "any defect in making service." As the Court of Appeals correctly observed, "[t]he provisions of K.S.A. 60-203(b) are triggered only when the original service of process 'purports to have been made' but is later declared invalid." 45 Kan. App. 2d at 1153. The Court of Appeals then dutifully looked at the *Hughes* court's definition of the verb "purport," which was " 'to have the appearance of being.' " *Hughes*,

240 Kan. at 375. But then the panel applied the *Hughes* definition as if it meant "to have the appearance of being *valid.*" That led the panel to return to the *Grimmett* rationale, which we reject herein, that a service of process cannot purport to have been made unless it appears to be facially valid.

Our disconnect with the panel's reasoning appears to derive from the meaning it places on the word "being" in the *Hughes* definition of purport. As we view it, a service of process can have the appearance of *being, i.e.,* can appear to exist, even though it was not created in accordance with the statutory directive, *i.e.,* does not appear to be valid. Perhaps it would have been better if *Hughes* had included all of the dictionary definition of "purport," which includes the following language: "To profess or claim, esp. falsely; to seem to be <the document purports to be a will, but it is neither signed nor dated>." Black's Law Dictionary 1356 (9th ed. 2009). That definitional example directly contradicts the panel's suggestion that a document cannot "purport" to be something where a facial defect would refute its validity.

Armed with a definition that more clearly captures the common meaning of "purport," we have no hesitation in finding that "service of process . . . purports to have been made" in this case. A petition and summons were sent by return receipt delivery to the defendant at his business address, and a return receipt was signed and mailed back to the plaintiff. Service of process had the appearance of being, *i.e.,* of existing. Then, Fisher filed a return of service and proceeded to prosecute the case, including serving interrogatories upon the defendant. Obviously, the plaintiff was professing or claiming to have effected service of process upon the defendant so as to allow the matter to proceed on its merits. In short, the Court of Appeals erred in holding that service of process was not purported to have been made in this case.

Moving on to the remaining statutory language, we note that the panel opined that the legislature did not set the standard so low that K.S.A. 60-203(b) could "be applied to save a cause of action any time service of process is found to be defective for any reason." *Fisher*, 45 Kan. App. 2d at 1154. The panel then speaks to service that has been "adjudicated to have been invalid due to any irreg-

ularity in form or procedure." 45 Kan. App. 2d at 1154. But that ignores the plain and unambiguous statutory language that permits a cure for "any defect in making service." Our function is not to decide how low the bar should be set, but rather we simply construe what the legislature has said about setting the bar. In *Hughes*, this court performed that construction:

"K.S.A. 60-203(b) is also declared to be applicable to any situation where the original service was invalid due to '*any irregularity*' in form or procedure or '*any defect*' in making service. The use of the word *any* makes crystal clear the legislative intent that the statute is to be liberally applied in cases involving *any irregularity* or *any defect* in the service of process." 240 Kan. at 375-76.

We, too, find the language of K.S.A. 60-203(b) to be crystal clear. That language does, indeed, provide that its provisions can be applied to save a cause of action any time service of process is purported to have been made and is thereafter found to be defective for any reason. Any suggestion to the contrary is hereby disapproved.

Consequently, we find that the district court erred in dismissing this case with prejudice without permitting the plaintiff the additional time set forth in K.S.A. 60-203(b) in which to obtain valid service of process. We remand with directions to allow the plaintiff an opportunity to utilize the savings provisions of K.S.A. 60-203(b).

Reversed and remanded.